THE MORRIS AND ESSEX RAILROAD COMPANY, appellants, *and* THOMAS GREEN, respondent.

The complainant was the owner of a farm, through which the defendants, the Morris and Essex Railroad Company, in the construction of their work, made an excavation. Commissioners were called, under the company's charter, to assess the damages, from whose award the complainant appealed. Before the hearing of the appeal, H. and W., who had contracted with the company to procure the right of way for them, and to pay the expenses of it, proposed to submit the matter in difference to

arbitration, which was done. By the charter of the company, they were obliged to construct and keep in repair suitable wagonways over or under their road where the railroad intersected any farm. During the deliberations of the arbitrators, the complainant stated that he should require a suitable wagonway over the railroad where it crossed his farm, but H. and W. replied that this was a matter with which the arbitrators had nothing to do, and was no part of the submission. This view was assented to by the arbitrators and both parties. The arbitrators made their award, and H. and W. waited on complainant with the money awarded and the draft of a deed. The complainant objected to signing this deed, on the ground, that it did not in express terms reserve all his rights to a crossing; but finally executed it, on being assured by H. and W., one of whom was a lawyer, that such rights would not be affected by the instrument. The company having failed to put up a crossing after being legally notified, the complainant made it at his own expense, and, by virtue of an authority contained in their charter, sued them at law for the money expended. The company set up the deed as a bar to the recovery. This bill was filed to reform the deed and enjoin the defendants from interposing it as a defence at law. The company filed a demurrer to the bill.

*Held* that, as between the company and the complainant, H. and W. were the agents of the company in procuring a deed for the complainant's land, notwithstanding the fact that they were bound by a contract with the company to procure the right of way for the railroad over complainant's land, and that representations made by H. and W. to complainant are to be regarded as made by the company, and that the company are estopped from setting up the deed for any purpose so distinctly repudiated in their bargain

That the company, by accepting the deed, ratified what was done by H. and W. in their behalf, and although it is true that no one is bound by his ratification of what has been done in his behalf, unless he is informed of all the circumstances, yet he cannot avail himself of the benefit of the act except *cum onere.*

The company being responsible for the acts of their agents, such a defence would be wholly inequitable and unjust. The complainant should not be compelled to be at the hazard or expense of litigating it. Whether the company, by a correct construction of the deed, are released from the liability imposed by their charter to construct the bridge—*query.*

The injunction granted by the Chancellor against the use of the deed by the company as a defence to complainant's suit at law, *held* a sufficient protection to the complainant without determining the question of his right to have the deed reformed.

———

This was an appeal from the Chancellor's decree.—See the case reported in Chancery, in 1 *Beasley* 165.

Morris and Essex Railroad Co. *v.* Green.

*E. W. Whelpley,* for appellants.

*Chandler* and *Frelinghuysen,* for respondent.

The opinion of the court was delivered by

BROWN, J. It appears, from the pleadings and proofs in this case, that Samuel B. Halsey and Freeman Wood, before the railroad company located the extension of their road to Dover, agreed with them, that if they would adopt the route by Rockaway (where they, Wood and Halsey, had property,) to guarantee to the company the right of way clear of expense for a portion of the distance, and to indemnify them from all damages that might arise or be assessed for so much of the right of way, and to pay and satisfy all such damages, and this agreement reduced to writing and sealed; that the respondent, Thomas Green, owned lands in this route, and Halsey and Wood applied to him for the right of way over it, and not being able to agree with him, so informed the company; that the company had the damages assessed by commissioners, pursuant to their charter, and their report filed; that Green, being dissatisfied with the amount reported in his favor, took the proper steps for an appeal, and as appears by the bill and answer, while such appeal was pending, Halsey and Wood agreed with him in behalf of the company, as they said, to arbitrate the question of amount of damages; that the arbitration was had, and the amount awarded paid by Halsey and Wood; that before paying the amount, they insisted upon Green's executing a deed to the company, which Halsey had prepared, by the terms of which Green, in consideration of $800 (the amount awarded to him) paid to him by the company, and the receipt of which was acknowledged, conveyed to the company the right to enter upon his land by their agents, and to take possession of, occupy, and excavate the same, lay rails, and do all other things suitable or necessary for the completion or repair of their road; to have and hold the same to the company, its successors and assigns for ever, for the purposes mentioned,

and for all other purposes mentioned in their charter and the supplements thereto. At the time of the assessment by commissioners, the award of arbitrators, and at the time of giving the deed, Green claimed, that besides the damages he was to receive, the company were bound to make a bridge over the excavation on his land at a place where he had a farm road, and was told, from the beginning, that that question was not involved in the question of damages. He gave the deed, and afterwards gave notice, as required by the ninth section of the charter, to the company that they were required to build a bridge at the place referred to, and that if they neglected to do so, he would build it himself, and look to them for the expense and value of it. The company refusing to build it, Green did it, and sued the company for the cost; the company pleaded the general issue, and gave notice that they would give in evidence the deed above mentioned, and rely upon it as a bar to the action. Green thereupon filed the bill now here, stating these facts, praying to have the deed reformed by inserting an exception of the right to a bridge on the ground of mistake, and to enjoin the company from using the deed as a bar to the action because of the mistake, and further, because such a use of it would be fraudulent. The Chancellor decreed in favor of the complainant on both points. The company appeal from the decree.

The first question is, should the company be enjoined from making such use of this deed?

The proof is plenary of the representation by Halsey and Wood, before the execution of the deed to Green, that it would have no effect upon the right to a bridge, if such existed. Wood says, in his testimony, that Green refused to give the deed on this account, and that he and Halsey labored to show him that it would have no such effect as he apprehended, and that he finally yielded to their view. There is no doubt that Messrs. Halsey and Wood were entirely honest in their statements on this subject, but it is manifest that *they* could not honestly set up the deed for a purpose so dis-

tinctly repudiated in their bargain. They would be estopped in equity.

So, if these representations are to be regarded as made by the company through their agents, they should not be permitted to set up this deed as a bar. It would be a fraudulent use of the deed. They are also estopped. The company do not deny this, but allege that Halsey and Wood were not their agents, and that they had no knowledge of what representations they made to Green, and are not responsible for them. As to the agency, I think the company are mistaken.

The arrangement was, that in consideration that the company would locate their road to suit Messrs. Halsey and Wood they would procure the right of way for the company at their own cost. The agreement on that subject, and the statement in the answer as to it, shows this to be so. The only mode of procuring these rights of way is by agreements between the company and landholders, or assessments between them of the damages on failure to agree. Messrs. Halsey and Wood were therefore to procure agreements between the landowners and the company for the right of way if they could, and to have assessments made if they could not. Is a man who procures a contract to be made between two other men anything but an agent? He may contract to procure the contract for a stipulated sum or any other consideration, but in procuring the contract he is an agent. The parties do not negotiate with each other—he negotiates between them. In this case the title to the right of way must be made to the company—they only can receive it. They say to Messrs. Halsey and Wood, we will take the route you wish, if you will at your own expense procure titles to us for the right of way from the landowners. Between the landowners and the company, Halsey and Wood are agents and nothing else. They make no contract with Mr. Green, but negotiate one between him and the company and for the company.

Again, by receiving the deed, the company ratify what Messrs. Halsey and Wood have done in their behalf. Subsequent assent to an assumed agency is equivalent to a pre-

vious authority.    It is true that no one is bound by his rati-
fication of what has been done in his behalf, unless he is
informed of all the circumstances.    He may in such case
withdraw his approval and repudiate the act if he has been
deceived, but he cannot avail himself of the benefit of the
act except *cum onere.*

. In this case, if the company had been surprised by the
representations made by Messrs. Halsey and Wood, they
might have repudiated the deed, even after the acceptance
of it; but they cannot hold and use it free of the equities
arising from the manner in which it was obtained.    By the
acceptance the act done in their behalf was ratified by hold-
ing the deed; and insisting upon their right to use it, they
are now ratifying it after notice of what was done at and
before the time it was delivered.

· The effect upon the company's right under the deed is the
same as if Messrs. Halsey and Wood had acted under the
usual agency to procure titles for them.    What they said to
Mr. Green has the same effect as if it had been communicated
by the company, provided it was within the scope of such
an agency.

The rule is stated in *Story on Agency*, § 135, as follows:
·" If the agent, at the time of the contract, makes any re-
presentation, declaration, or admission touching the matter
of the contract, it is treated as the representation, declara-
tion, or admission of the principal himself."    These repre-
sentations were made at the time of the delivery of the deed,
and Mr. Wood says that, but for them, he believes it would
not have been given.

. I think it is clear that the Chancellor rightly decreed that
the company should be enjoined from setting up the deed or
award as a bar in the action at law for the cost or value of
the bridge in question.

The company being responsible for the acts of their agents,
such a defence would be wholly inequitable and unjust.    The
respondent should not be compelled to be at the expense or
hazard of litigating it.

The remaining question in the case is, whether the deed

should be reformed so as to contain an exception of the complainant's right to the construction of a bridge by the company on the ground of mistake.

It is objected that the mistake, if any, was one of law, and not of fact. Such mistakes may have been corrected in equity in cases like the present. It was occasioned here by the advice and opinion of the agents of the company, one of them a lawyer, and both men of high character for intelligence and integrity. It is not a mere mistake of the party asking a reformation of the instrument, but one induced by the agents of the other party. It will not do to say that Mr. Green ought not to have trusted his adversaries. They were not such as to the bridge right. They had no interest in that question, and throughout the negotiation, including the assessment, award, and the execution of the deed, maintained to Mr. Green that it had nothing to do with the right of way they were to procure for the company.

But the case seems to belong rather to the jurisdiction of the courts of equity in cases of constructive frauds than that of mistake. It may, notwithstanding the case of *Brearley* v. *The Delaware and Raritan Canal Co., Spencer R.* 236, be questioned whether, upon a fair construction of this deed, it does release the company from the charter obligation to construct roadways. This point is not directly before the court, nor is it needful to express any opinion upon it in order to give the complainant relief. The injunction decreed by the Court of Chancery is sufficient for that purpose, so far as respects the suit now pending at law; and if desired by the complainant, this court would no doubt order it enlarged so as to embrace any future suit for the same cause of action.

Decree of the Chancellor affirmed, excepting the clause relating to the reformation of the deed.

The Chancellor's decree was affirmed by the following vote:

*For affirmance*—Judges BROWN, COMBS, ELMER, HAINES, KENNEDY, OGDEN, VAN DYKE, VREDENBURGH—8.

*For reversal*—None.