Freichnecht v. Meyer.

GUSINE FREICHNECHT, complainant, appellant,

*v.*

MAGDALENA MEYER, defendant, respondent.

1. A bill to redeem alleged that the defendant was a mortgagee in possession; that the complainant was owner of the equity of redemption and was ready to pay the mortgage debt. The answer alleged that the defendant had become the owner of the absolute title by purchasing the complainant's equity of redemption under a justice's court judgment against the complainant, docketed in the common pleas. The complainant filed a general replication. —*Held*, that the question whether the title, under the docketed judgment, was valid or void on its face, was properly put in issue.

2. On such an issue, the proper practice in chancery is to send an issue on the legal title to be tried at law, or to retain the bill until an action can be brought at law to try the legal title, or until an action pending at law for that purpose can be determined; and the court of equity can so control the action at law that the legal question may be decided. If the parties waive a trial at law, the court of equity is at liberty to decide the question for itself.

3. *Tasto* v. *Klopping, 14 Vr. 448*, re-affirmed.

4. When parties have acted under a mutual mistake of law, and the party jeopardized thereby can be relieved without substantial injustice to the other side, equity will afford redress, especially if the party to be benefited by the mistake invokes the aid of equity to put him in a position where the mistake will become advantageous to him.

5. A mortgagee, having recovered in a court for the trial of small causes a judgment against the mortgagor for a debt other than the mortgage debt, docketed the judgment in the common pleas, and at a sheriff's sale under execution from the pleas bid in the mortgaged premises, believing that she was purchasing a good title thereby. The mortgagor, believing that the mortgagee had thereby secured an absolute title, surrendered possession to her, and thereafter the mortgagee, with the knowledge of and without objection from the mortgagor, used the property as her own, and placed substantial and permanent improvements thereon. Subsequently, the mortgagor discovered that the constable's return to the execution from the trial court was so defective as to render the docketing and sheriff's sale illegal and void, and thereupon filed a bill to redeem.—*Held*, that she must pay the mortgagee the value of the improvements.

On appeal from a decree of the chancellor, whose opinion is reported in *Freiknecht* v. *Meyer, 11 Stew. Eq. 315.*

*Messrs. E. D. & W. B. Gillmore,* for appellant.

*Mr. Joseph A. McCreery,* for respondent.

The opinion of the court was delivered by

DIXON, J. The complainant filed her bill to redeem a lot of land in Jersey City from two mortgages, dated respectively February 6th, 1869, and April 2d, 1872, given by herself and husband to the defendant, to secure $400. The bill avers that about March 7th, 1878, the defendant took possession of the mortgaged premises as mortgagee, and still holds the same, and prays that an account may be taken and allowance made to the complainant of the rents and rental value of the property, and that, if any balance shall appear to be due the defendant on her mortgages, she may be decreed to surrender the mortgaged premises to the complainant on payment of such balance, which the latter tenders herself ready to pay.

The defendant's answer admits the mortgages and the entry into possession about March 7th, 1878, but alleges that the defendant

"Entered into and has since remained in possession of said mortgaged premises, as stated in the bill, but not simply as mortgagee thereof, but also as owner by purchase of the equity of redemption which the complainant theretofore had in said premises."

The answer then sets forth the means by which the defendant claimed to have become the owner, viz., a judgment in her favor against the complainant, obtained in a court for the trial of small causes, for a debt outside of the mortgage debts; the docketing of that judgment, in due form of law, in the common pleas of Hudson county; a *fi. fa.* from the common pleas, and a sale and conveyance of the premises by the sheriff of Hudson county to the defendant. The answer further avers that the complainant acquiesced in said conveyance, and thereupon voluntarily surrendered the possession of the premises to the defendant, who entered, paid off taxes, water-rents and assessments, and some time afterwards made valuable improvements upon the property.

The complainant filed a general replication.

About the time the bill was exhibited, the complainant brought an action of ejectment for the premises against the defendant, in the Hudson county circuit, to which the defendant pleaded the general issue, and, on particulars of her title being demanded, set up the mortgages and the sheriff's deed, with the proceedings whereon it rested. Thereupon the complainant applied to the chancellor for an order that the ejectment suit should stand as an issue from chancery to try the title under the sheriff's deed presented by the answer, and that the defendant should be restrained from relying thereon upon the mortgage, so that it might be ascertained at law whether the complainant was still the owner of the equity of redemption. The defendant opposing this application, it was denied.

Proofs were then taken in the cause, which established the facts alleged in the pleadings, except that they also developed the matter upon which the complainant relied to show that the defendant's title under the sheriff's deed was, on its face, illegal and void.

At final hearing, the chancellor dismissed the bill on the ground that it was silent as to the sheriff's deed, and stated that the defendant took possession as mortgagee, when in fact she entered as owner of the equity of redemption, and held under both the sheriff's deed and the mortgages. He declined to pass upon the validity of that deed, because the bill raised no issue thereon, and said that if it had raised such an issue, the court would have had no jurisdiction over it, it being a purely legal question.

From this dismissal the complainant appeals.

The first question arising touches the sufficiency of the bill.

The most important part of a bill in equity is that denominated the "stating-part," in which should be set forth all the facts fundamentally material to the complainant's case, actually essential to it as a portion of its very consistency, and none others. *Farren's Bill in Chancery pp. 15, 30.* Formerly the bill contained very little more than the stating-part. *Partridge* v. *Haycraft, 11 Ves. 570.* And if the defendant, by plea or answer,

introduced new matter, which made it necessary for the plaintiff to put in issue some additional fact on his part in avoidance of the new matter, that was done by a special replication. *Story's Eq. Pl.* § *878.* A general replication would only deny the truth of the new matter. *Lovett* v. *Demarest, 1 Hal. Ch. 113.* But special replications having now gone out of use, there have been substituted in their room either amendments of the bill, or what is styled the charging-part of the bill. This latter usually consists of some allegations that set forth the matters of defence or excuse which it is supposed the defendant intends or pretends to allege in justification of his non-compliance with the plaintiff's right or claim; and then charges other matters which disprove or avoid the supposed excuse or defence. It is sometimes also used for the purpose of obtaining a discovery of the nature of the defendant's case, or to put in issue some matter which it is not for the interest of the plaintiff to admit. *Story's Eq. Pl.* § *31; Mitford's Ch. Pl. 50.* The charging-part of the bill is, however, often omitted, and does not seem indispensable in any case. *Story's Eq. Pl.* § *33; 1 Dan. Ch. Pr. 376.*

It thus appears that if the complainant has averred, in the bill, all the facts necessary to constitute his right to the relief sought, and intends to rely upon a mere denial of the matters which the defendant may assert to defeat his claim, he can safely dispense with the charging-part of the bill and the special replication. The stating-part of the bill and the general replication will put in issue everything essential to his relief.

This was the complainant's position in the present case. The bill averred that she was the owner of the equity of redemption; that the defendant was a mortgagee in possession, and that the complainant was ready to pay her debt, in redemption of her land. This constituted her complete title to relief. She knew, indeed, that the defendant would deny her ownership of the equity of redemption, and would set up a conveyance to herself of the absolute estate, but the complainant sought no discovery, and no equitable assistance against that conveyance, and trusted to nothing but its inherent and manifest defects to show its invalidity. Under these circumstances, her bill and general repli-

cation were sufficient to present all the issues necessary to be determined.

The next question is, What course was proper to be pursued respecting the claim which the defendant set up in bar of the complainant's equity of redemption? This claim was that the complainant's estate, regarded as an equitable interest only in its relation to the mortgage, but as a legal estate for all other purposes, had been conveyed to the defendant by proceedings at law. It presented a question of legal title.

The general rule is that a court of equity has no jurisdiction to try or establish, by its decree, the legal title to lands. *Am. Dock and Imp. Co.* v. *Trustees, 10 Stew. Eq. 266.* When, therefore, the existence of such a title is put in issue in an equity cause, various modes of dealing with it have been adopted. Sometimes, when the complainant's right to the relief sought depended upon his having the legal title, and there was no obstacle to his assertion of that title in an action at law, the court of chancery has dismissed his bill because it was filed before he had so asserted and maintained his title. This has been done with bills of peace, and bills for partition, and in other cases. The modern practice, however, leans much more toward the retention of the bill (except in some sorts of bills of peace), until an opportunity is afforded to the complainant to bring a legal action upon his title, or until an issue out of chancery can be tried at law. *Hartshorne* v. *Hartshorne, 1 Gr. Ch. 349; 2 Lead. Cas. in Eq. 880 (Agar* v. *Fairfax).* This practice seems to be necessary when the complainant relies upon an equity only, and the defendant sets up a legal right in defence. It is also usual, when an action at law is to be brought, for the court of chancery to control the action in such a manner that the issue to be tried shall be that on which the chancellor desires an adjudication at law. Thus in *Thornton* v. *Court, 3 De G., M. & G. 293,* where the defendant held a mortgage, by which he could prevent a trial at law of the issue which it was designed to have settled, the equity court made an order restraining the defendant from using the mortgage for that purpose. A similar power was exercised in *Decker* v. *Caskey, Sax. 427.* If an action at

law be already pending, wherein the question involved may be decided, the chancellor adopts the obvious cause of controlling that suit to reach his ends. *Swanger* v. *Gardner, 3 De G. & S. 696.* These cases indicate the proper procedure in the present instance. The complainant claimed against the defendant an equitable right remaining out of her former legal estate. She admitted that the defendant, as mortgagee, held a legal title consistent with her own equitable interest. The defendant set up a different legal title subversive of the complainant's equity. The complainant claimed no equity against such an estate, but simply denied its existence. The complainant having instituted an action of ejectment, in which, if the mortgages were kept out of view, the existence of that estate could be determined, and having asked the chancellor to control that cause so as to try the question, we think the petition should have been granted. No complaint is made, or appears possible, against the fairness of such a course. To dismiss the bill for want of jurisdiction, either to try or have tried the legal title, rendered the complainant's equity, however well founded, wholly unavailable. In chancery, she was confronted by the sheriff's sale; at law, by the mortgages. The procedure which her petition sought was the only method of redress open to her, except that which this court will now adopt in its stead.

When, at the defendant's instance, a trial at law was refused, the defendant could not complain if the chancellor had, himself, decided the question. Cases need not be cited to indicate the rule that when a matter proper for the determination of a court of law arises in an equity cause, the chancellor may, by consent of parties, himself pass upon it, since the practice was so recently followed by us in *Palys* v. *Jewett, 5 Stew. Eq. 302,* a case standing on the very verge of the rule. This brings us, then, to a consideration of the point in issue—the validity of the sheriff's sale.

As already stated, that sale was made under an execution from the court of common pleas upon the docketing there of a judgment rendered in a court for the trial of small causes. In *Tasto* v. *Klopping, 14 Vr. 448,* it was decided that a condition precedent

Freichnecht *v.* Meyer.

to the lawful docketing of such a judgment was a constable's
return, upon an execution out of the trial court, to the effect that
he could not find *any* personal property of the defendant whereon
to levy, or that he had levied and sold the goods and chattels
found and had made thereof part of the judgment, and that the
same was not fully satisfied, and stating the balance still unsat-
isfied.   It was also decided that a constable's return, to the
effect that he could not find property enough to pay the *entire*
*amount* of the execution, was not a compliance with this condi-
tion, and that such non-compliance would defeat a title based
upon the execution from the common pleas.   This decision is
applicable here.   In the proceeding on which the defendant
relies the constable's return was :

" I return the within execution this August 16th, 1876, unsatisfied.   I could
not find sufficient goods and chattels belonging to said defendants, in this.
county, whereon to levy and pay the demand according to law."

This means that he could not find enough property to satisfy
the whole judgment, and not that he could not find any, or had
sold what he could find and a balance still remained.   It is sub-
stantially the same as was condemned in the case just cited.   The
defendant's title under the sheriff's deed must therefore be ad-
judged bad, and it follows that the complainant still has an
equity of redemption.

The case, however, presents circumstances which require the
court to impose on the complainant certain conditions precedent
to the exercise of her right to redeem, viz., the payment to the
defendant of a fair compensation for the permanent improve-
ments she has made.   It appears that, before the sheriff's sale,.
both complainant and defendant believed that such sale would
be valid, and some negotiations passed between them on that.
assumption, from which the defendant not unreasonably inferred
that the complainant was willing she should take the property
in satisfaction of her judgment, if no one else would bid more ;.
that after the sale, both parties believing it to have been legal,
the complainant surrendered and the defendant took and retained
possession of the premises, and thereafter the defendant treated

them as her own, making lasting improvements which greatly increased their value; that the complainant knew of these improvements and believed that the defendant was acting upon the idea that she was owner, yet never questioned her title nor objected to her conduct until this bill was filed. Now, without undertaking to say that these facts would give the defendant a right to affirmative relief, we think it plain that they present a case for the application to the complainant of the maxim that they who seek equity must do equity. There would be a manifest inequity in the complainant's appropriating the benefit of the defendant's expenditures without compensation. Such an appropriation would be contrary to the expectation of both parties when the outlays were made. Against it the defendant has a perfect shield at law in her estate as mortgagee, and this court should not deprive her of that shield except upon terms which are just.

The complainant urges that the question whether the defendant's title was good or bad depended upon the sufficiency or insufficiency of the constable's written return to his execution, and hence was a question of law, the correct solution of which the defendant was bound to know; that therefore the defendant is chargeable with knowledge that she had no title except under her mortgages, and so must be held to have made the improvements as mortgagee; and that a mortgagee is not entitled to re-imbursement beyond necessary repairs.

No doubt the general rule, both at law and equity, is "*ignorantia juris haud excusat*," as the courts of this state have repeatedly declared. *Garwood* v. *Eldridge, 1 Gr. Ch. 145; Bentley* v. *Whittemore, 3 C. E. Gr. 366; Hampton* v. *Nicholson, 8 C. E. Gr. 423; Hayes* v. *Stiger, 2 Stew. Eq. 196.* The rule, however, has not been considered universal and inflexible. Thus in *Champlin* v. *Laytin, 6 Paige 189, 195,* Vice-Chancellor M'Coun said : " As a general rule, this court does not relieve upon the ground of a mistake in matters of law, because every man is presumed to have a knowledge of the law. * * * Yet there are cases in which this court will interfere upon the ground of such mistake. * * * As, for instance, * * * if both parties

should be ignorant of a matter of law, and should enter into a contract for a particular object, and the result according to law should be different from what they mutually intended, there, on account of the surprise or immediate result of the mistake of both, there can be no reason why the court should not interfere to prevent the enforcement of the contract and to relieve from the unexpected consequences of it. To refuse would be to permit one party to take an unconscientious and inequitable advantage of the other, and to derive a benefit from a contract which neither of them ever intended it should produce." On this principle he based his decree. On appeal (*Id. 202*), Chancellor Walworth, affirming the decree for other reasons, refrained from expressing any opinion one way or the other upon the point of decision below, which he said presented great difficulties on both sides. In the court of errors (*18 Wend. 407*), notwithstanding Justice Bronson's elaborate and forcible presentation of the opposite view, Senator Paige stated his concurrence in the principle laid down by the vice-chancellor. So, in England, Sir John Leach, V. C., in *Naylor* v. *Winch, 1 S. & S. 555*, said: "If a party, acting in ignorance of a plain and settled principle of law, is induced to give up a portion of his indisputable property to another under the name of compromise, a court of equity will relieve him from the effect of his mistake;" and in *Clifton* v. *Cockburn, 3 M. & K. 76*, Lord Brougham said: "I think I could, without much difficulty, put cases in which a court of justice, but especially a court of equity, would find it an extremely hard matter to hold by the rule and refuse to relieve against an error of law." Likewise in *Stone* v. *Godfrey, 5 De G., M. & G. 76*, Lord Justice Turner stated that he had no doubt the court had power to relieve against mistakes in law as well as against mistakes in fact. Similar *dicta* by all the justices appear in *Rogers* v. *Ingham, L. R. (3 Ch. D.) 351*. See, also, *Stupilton* v. *Stupilton, 2 L. C. in Eq. 1675*. In the recent case of *Cooper* v. *Phibbs, 17 Ir. Ch. Rep. 73*, the lord chancellor of Ireland said: "No doubt a mistake in point of law may be corrected both in this court and in a court of law. This is now perhaps sufficiently established, though it was for some time a subject of con-

troversy in courts of law;" and finally when the case reached the house of lords (*L. R., 2 H. L. 149*), Lord Westbury used this language: " It is said '*ignorantia juris haud excusat*;' but in that maxim the word '*jus*' is used in the sense of denoting general law—the ordinary law of the country. But when the word '*jus*' is used in the sense of denoting a private right, that maxim has no application. Private right of ownership is a matter of fact; it may be the result also of matter of law; but if parties contract under a mutual mistake and misapprehension as to their relative and respective rights, the result is that that agreement is liable to be set aside as having proceeded upon a common mistake." To the same effect is the language of Lord Chelmsford, in *Earl Beauchamp* v. *Winn, L. R. (6 H. L.) 223, 234*, concurred in also by the other lords.

These citations (and others of similar purport might be adduced) sufficiently indicate that in a court of equity, at least, a man is not, under all circumstances, to be regarded as fully comprehending all his legal rights and duties, so far as they grow out of facts which he knew, or with reasonable diligence might have learned. Indeed, one large branch of equity jurisprudence, the reformation of written instruments, appears to rest mainly upon an exception to such a doctrine; for if parties acquainted with the tenor of documents which they execute are to be conclusively presumed to know also their legal import, it would seem that there could be no room for the notion that the writings did not express their real intention. But constantly courts of equity reform the most solemn instruments upon the ground, not that the parties have inserted words which they meant to exclude, or omitted words which they meant to insert, but that the language does not express their agreement; that they did not put upon the terms employed the same construction as the law does; in short, that there was a mutual mistake of law, using the word 'law' in its broader sense. *Weller* v. *Rolason, 2 C. E. Gr. 13; Green* v. *M. & E. R. R. Co., 1 Beas. 165, 2 McCart. 469; Wanner* v. *Sisson, 2 Stew. Eq. 141; Stines* v. *Hayes, 9 Stew. Eq. 364, 11 Stew. Eq. 654.*

In this state of the decisions and *dicta,* it would be scarcely

Freichnecht *v.* Meyer.

prudent to attempt to lay down a very comprehensive rule for the relief in equity against mistakes of law. I am not prepared to agree with Lord Westbury that in all cases the ownership of property is to be classed among matters of fact, or that in the maxim " *ignorantia juris haud excusat jus* " denotes only general law, the ordinary law of the country, as distinct from the legal interpretation of private instruments. But I think it will be found to accord with the decisions, and with the safe and equitable conduct of affairs, to establish this rule : that whenever the mistake of law is mutual, and the party jeopardized thereby can be relieved without substantial injustice to the other side, there equity will afford redress, especially if the party to be benefited by the mistake invokes the aid of equity to put him in a position where the mistake will become advantageous to him.

In *Haggerty* v. *McCanna, 10 C. E. Gr. 48,* Chancellor Zabriskie felt the hardship of refusing assistance to a complainant who had spent his money in improving an infant's lands under the belief that they belonged to his wife, although his mistake was one of general law, and could not be said to have been shared in by the defendant, an infant ; nevertheless, the chancellor intimated that relief would have been afforded if the defendant, instead of the complainant, had been an applicant for the exercise of equitable power. In *Putnam* v. *Ritchie, 6 Paige 390,* which was like *Haggerty* v. *McCanna,* Chancellor Walworth, while refusing compensation to the complainant, said that his claim rested upon a principle of natural equity which was fully adopted in the civil law, and which, in his own court, was constantly acted upon where the legal title was in the person who had made the improvements in good faith, and where the equitable title was in another who was obliged to resort to the court of equity for relief ; the court, he says, in such cases acts upon the principle that the party who comes as a complainant to ask equity must himself be willing to do what is equitable.

The case of *Cooper* v. *Phibbs, ubi supra,* completely sustains the rule above enunciated. There, the father of the defendants had been entitled to an estate for life only in a fishery, but had supposed himself to be the absolute owner, and under that belief

had laid out large sums of money in extending and improving it. On his death, his heirs, the defendants, thought they had become its owners, and with that opinion they made a lease for years to the complainant, who had always entertained the same view of the title. In truth, on the death of the defendants' father, the title had vested in the complainant for life by force of a trust agreement, the existence of which was known to all the parties, and the contents of which they knew or could readily have learned, but which had been misconstrued. The complainant, on coming to a recognition of his rights, filed a bill to set aside the lease. The house of lords acceded to his prayer, but upon the terms that the expenditures of the former tenant for life, in the permanent improvement of the fishery, should be repaid to his representatives. *Vanderhaise* v. *Hugues, 2 Beas. 410,* seems to be of similar character. The defendant was, in fact, mortgagee in possession under a conveyance from the complainant absolute on its face. From the circumstances mentioned in the chancellor's opinion, it is to be inferred that the defendant had been considered by both himself and the complainant to be the absolute owner, and as such had made lasting improvements on the property. Chancellor Green decreed, on the complainant's bill to redeem, that the defendant must be allowed for those improvements.

The case before us stands upon the same footing, and the complainant should be permitted to exercise her right of redemption only on condition that she pay to the defendant the present value of the permanent improvements which she has made on the premises.

Therefore, let the decree of the chancellor be reversed; let an account be taken of the amount due the defendant for principal and interest on her mortgage, and in this account the mortgage must be regarded as not usurious, for, besides the insufficiency of the averments of the bill touching usury, we think the evidence does not prove the charge. To this amount let the taxes, water-rents and assessments, and the cost of necessary repairs paid by the defendant, with interest thereon, be added, so far as the same were not increased by the lasting improvements.

From this total must be deducted what rents the defendant received, or without willful default (*Seton on Decrees, Heard's Ed. 487; Vanderhaise* v. *Hugues, ubi supra*), might have received from the property in its unimproved condition, and a proper charge for the occupancy thereof by the defendant herself. The balance will be the price at which the complainant has the right to redeem. But let the value of the defendant's improvements also be ascertained, and the payment of such value to the defendant be decreed to be a condition precedent to the complainant's exercise of her right of redemption.

The defendant urges, also, that she should have a decree for payment of the sum which she bid at the sheriff's sale, being the amount of her docketed judgment. But we think this should not be accorded to her, for the reason that the docketing proceedings being wholly void, the judgment remains in the trial court unsatisfied and in full legal effect; her hold upon that judgment has not been impaired.

She also insists that her mortgagee, Harper, is a necessary party to the suit, and that, as the complainant has not brought him in, no decree for redemption can be made. The case, however, does not disclose whether his mortgage was on record at the filing of the bill, so as to entitle him to be joined. *Rev. p. 118 § 78.* If it was, the complainant must amend.

Let the record be remitted, and a decree be made in accordance with the foregoing views.

