340

EDWARD SKOWYSZ AND EDWARD H. BENSON, PLAIN
TIFFS, v. CITY OF VENTNOR, A MUNICIPAL CORPORA-
TION, MAYOR PHILLIP B. ROBINSON AND MEYER
SEGAL, MATTHEW GALLAGHER, RODNEY S. KREI-
SCHER, SAMUEL J. KLIGERMAN, JOHN R. BEST,
THOMAS WHIMS AND CARL VALORE, SR., COUNCIL-
MEN OF THE CITY OF VENTNOR, JOINTLY, SEVER-
ALLY AND IN THE ALTERNATIVE, DEFENDANTS.

Superior Court of New Jersey
Law Division

June 4, 1969.

*Mr. Lawrence M. Perskie* and *Mr. Marvin D. Perskie* for plaintiffs (*Messrs. Perskie & Neustadter,* attorneys).

*Mr. Phillip B. Robinson,* Attorney pro se.

Mr. *Martin L. Blatt* for all defendants other than Phillip
B. Robinson (*Messrs. Blatt, Blatt & Consalvo,* attorneys).

## OPINION

HORN, J. S. C. Plaintiffs, citizens and taxpayers of the
City of Ventnor City, instituted against the city an action
in lieu of prerogative writ to set aside Ordinance No. 2–
1968, providing for the sale of certain lands and to enjoin
the sale of said lands. The city counterclaimed, seeking a
declaratory judgment declaring that the ordinance is valid
and that it may sell the lands pursuant to said ordinance.

Ventnor City borders the Atlantic Ocean, which is to its
south. It is now governed by a commission form of govern-
ment, but from its incorporation and up to and including
the enactment of the 1968 ordinance, it enjoyed a mayor
and common council form of government.

Ordinance No. 2–1968 provides in part as follows:

"BE IT ORDAINED BY THE COUNCIL OF VENTNOR CITY,
NEW JERSEY, THAT:
SECTION 1. There be constructed between Richards and Fred-
ericksburg Avenues along the beachfront, oceanfront jetties and that
upon the accretion of sufficient beach area, or earlier contingent
upon such accretion of beach area, of at least 125′ for purposes of
public resort and recreation between the boardwalk and the mean
high water line on the ocean side of the boardwalk, that the existing
street ends and utilities be extended approximately 125′ and such
lands that are then no longer needed for public use, lying between
the existing bulkhead and boardwalk and between Richards and
Fredericksburg Avenues, be bulkheaded, filled and offered for pub-
lic sale for residential purposes consistent with present zoning re-
quirements and upon such terms and conditions as shall be sub-
sequently set forth by resolution of City Council.
SECTION 2. All such stated improvements shall be in accordance
with the plans and specifications to be prepared by the City Engineer
and duly approved by Council."

A boardwalk or wooden promenade supported by piling or
piers parallels the beach along the entire length of the city.
The city's easterly boundary is Jackson Avenue. Its westerly
boundary is Fredericksburg Avenue. The northern line of

the boardwalk is 425 feet south of Atlantic Avenue, which is parallel to the boardwalk.

Jackson Avenue and all other streets mentioned hereinafter, except Atlantic Avenue, are generally at right angles to the boardwalk and Atlantic Avenue. Richards Avenue is 30 blocks from Jackson Avenue and 12 blocks from Fredericksburg Avenue. From Jackson Avenue to $62\frac{1}{2}$ feet east of Richards Avenue, private houses are built practically up to the boardwalk with a wooden bulkhead only a few feet from the northern side of the boardwalk. Between Richards Avenue and Fredericksburg Avenue the bulkheads are aligned 125 feet north of the northerly line of the boardwalk. The 125 feet between the bulkhead line and the boardwalk is beach or strand. Its appearance and use is and always has been precisely the same as the rest of the beach area under and south of the boardwalk. At the present time the ocean comes up to and under the boardwalk, washing over this area at full tide. It is this 125 feet strip which the governing body contemplates selling, pursuant to the terms of the ordinance.

■ An adjudication with respect to the validity of the ordinance, or the right of the municipality to sell all or any part of the strip, ordinarily might be considered as premature because the condition for sale might not arise. However, the municipality anticipates the expenditure of large sums of money (over $200,000) for the purpose of securing alluvial accretion of the beach. This will be accomplished through the construction of jetties or groins in order to satisfy the condition precedent stipulated by the ordinance. Thus, before the sale of the area in question, the city seeks a favorable judgment of this court so that these moneys will not be expended in vain. Therefore, the controversy is currently justiciable and not premature. For this reason it filed its counterclaim for a declaratory judgment.

A determination of the questions which must be answered requires that legal as well as factual history be examined.

By an act approved April 26, 1894, *N. J. S. A.* 40:179–98 *et seq.* (Section one), any city in this state located on or

near the ocean, and embracing within its limits or jurisdiction any beach or ocean front (which admittedly included Ventnor City) was authorized to open and lay out on and along such beach or ocean front a public park or place for public resort and recreation, and to acquire lands for such purpose by purchase and condemnation. *N. J. S. A.* 40:179–99 (Section two) provides that when the governing body of any such city shall determine to open and lay out such a park, it shall first cause the interior or inland line of the same to be established and suitably marked upon the ground, and cause a description of the same to be filed in the office of the city clerk of said city, there to remain of record; "and such interior or inland line shall not be established further inland than the ordinary high-water mark along such beach or ocean front, and may extend along the same within the limits of such city, or along any part thereof * * * ."

*N. J. S. A.* 40:179–103 (Section six) provides that the governing body may regulate the use of such lands and property. It also contains other directives not pertinent to the issues here.

In 1909 the city adopted Ordinance No. 22 expressly pursuant to the power and authority conferred by the Act of 1894. It recited that "* * * the Common Council of Ventnor City does hereby determine to open and lay out a public park or place of public resort and recreation along the beach or ocean front of said City within the limits and jurisdiction of said City, * * * and does hereby determine, fix and establish the interior or inland line of the same, as required by the said act, as follows: * * * ." The line was fixed at a distance 425 feet south of the southerly line of Atlantic Avenue for the length of the municipality. By a subsequent section, the boundaries of the "public park or place for public resort and recreation" were fixed by this line on the north and the exterior line established by the Riparian Commissioners of the State of New Jersey on the south. The city solicitor was authorized, on behalf of the

city, to condemn such lands which were not dedicated to use as a public park or place for public resort and recreation, or should not be purchased by the city for such purpose. It will have been observed that the northerly line of the boardwalk overlies the inland line fixed by this ordinance. See *Fishblatt v. Atlantic City,* 78 *N. J. L.* 134 *(Sup. Ct.* 1909), aff'd. 80 *N. J. L.* 269 (E. & A. 1910) ; *Bew v. Ventnor City,* 81 *N. J. L.* 207 (Sup. Ct. 1911).

Commencing in 1910, a number of lot owners executed deeds to the city which recited the passage and general objectives of the 1909 ordinance, and then "* * * for the purpose of enabling the said City to use the lands lying oceanward from the inland line so established and within the boundaries above designated as a public park, and place for resort and recreation in pursuance of the provision of said act" conveyed title to the city of their lands south of the inland line. By the end of 1913, all or substantially all of the landowners had executed similar deeds granting title to the city from the center line of Jackson Avenue, the easterly boundary line, to Buffalo Avenue, one block west of Richards Avenue.

Whereas the Act of 1894, *N. J. S. A.* 40:179-98 *et seq.,* by its terms could only be applicable to municipalities located on or near the ocean and embracing within its limits any beach or ocean front, *N. J. S. A.* 40:61-1, subd. a, a part of the *Home Rule Act* enacted in 1917, is much broader. This statute authorized the governing bodies of municipalities to "Acquire, lay out, improve, embellish and maintain, within and without the municipality, such public parks, squares, open spaces, playgrounds, beaches, water fronts and places for public resort and recreation, and also streets, avenues, boulevards and parkways leading to and connecting the same, as it may deem advisable * * *." By its terms the statute was applicable to any land, including water front lands, whether the water front be along the ocean or some other water front.

In 1918, by Ordinance No. 8, the governing body ordained that the city acquire, lay out and make available to the public as a park, open space, water front, beaches and places for public resort and recreation, and to acquire the title of lands between the inland line and Atlantic Avenue, a width of 337.5 feet west of the westerly line of Suffolk Avenue, and other lands between Newport and New Haven Avenues, from the southerly line of Atlantic Avenue, to the inland line (these two tracts are east of the area in question), also other lands between Washington Avenue and Fredericksburg Avenue from the southerly line of Atlantic Avenue to the inland line (this tract is west and includes the area in question). It is assumed that the city intended by this ordinance to acquire title to these tracts as special playgrounds or places of recreation north of the inland line.

In 1920, by Ordinance No. 8, the ordinance of 1918 was amended, changing the location of the lands to be acquired as set forth in the 1918 ordinance.

In 1922 the governing body adopted Ordinance No. 13, purporting to amend both the 1918 and 1920 ordinances. This ordinance provided that the city acquire and lay out and make available to the public as park, open space, public square, water front, beaches, playgrounds and place for public resort and recreation, and for that purpose acquire fee title to lands, part of which comprises the strip 125 feet wide. Actually the ordinance authorized the acquisition of all the lands south of the inland line to the exterior line and 125 feet north of it between a point 62-½ feet east of Richards Avenue down to Fredericksburg Avenue. The wording of the ordinance makes it clear that it was enacted pursuant to *N. J. S. A.* 40:61-1, subd. a.

After the ordinance of 1922 was adopted, the city acquired title to all these lands by condemnation and conventional purchase. The petitions for condemnation referred to this ordinance as authority for the action. In each petition the purposes of acquisition as stated in the ordinance are repeated.

The most recent transfer, pursuant to the 1922 ordinance, took place in 1944. By deed bearing date September 21, 1944, the city acquired an area 62-½ feet wide from a line 300 feet south of Atlantic Avenue to the exterior line established by the Riparian Commissioners. This tract lies just east of Richards Avenue.

Since the passage of the ordinance in 1922, the residents and governing body of the city of Ventnor, as well as its officers and agents, have regarded the area as a public park or beach front. In 1924 the city adopted Ordinance No. 5, which provided for the construction and maintenance of bulkheads, jetties and other structures in order to protect the ocean or beach front of Ventnor City from encroachment by the sea. It specifically provides:

"* * * Such improvement, repairs and structures may be made and erected both above and below high water line * * *";

In 1922 the city also adopted Ordinance No. 21, which authorized a bond issue to raise moneys to acquire, by purchase or condemnation, that land described in Ordinance No. 13-1922 between a line 300 feet south of Atlantic Avenue to the exterior line and between Federicksburg Avenue and a line 62-½ feet east of Richards Avenue "* * * for the purpose of laying out, improving, embellishing and making the same available to the Public as Park, open space, Public square, water front, beaches and place of Public resort and recreation within Ventnor City * * *." Minutes of council meetings, held on January 22, 1923, January 29, 1943, May 14, 1923, January 28, 1924, February 18, 1924, April 14, 1924 and August 11, 1924, demonstrate council's regard for this strip as part of the beach, or beach front or public park. Although a 1928 building zone map does not designate the strip as park or beach, later maps describe the area in question as a city park. A map of ocean frontage made in 1917 shows the bulkhead line along the beach front to be at approximately the same location west of Richards

Avenue as east of it. This line was changed after the acquisition of the strip pursuant to the 1922 ordinance to move it back the 125 feet.

As late as 1963 a master plan for the long range general development of the City, which was adopted by the planning board of the city, shows as beaches and marinas the 125 foot strip in the same fashion as the beaches on the south side of the boardwalk.

A municipality cannot act as an individual does. It must proceed in conformity with the statutes or, in the absence of statute, with the common law, by ordinance, or resolution or by motion. This is especially true with respect to real estate. *Anschelewitz v. Borough of Belmar*, 2 *N. J.* 178 (1949); *N. J. Good Humor, Inc. v. Board of Com'rs, etc., Bradley Beach*, 124 *N. J. L.* 162 (*E. & A.* 1939); *City of Burlington v. Dennison*, 42 *N. J. L.* 165 (*E. & A.* 1880). The parties advance disparate views as to the interpretation of the statutes which authorize sales of lands by municipalities.

The general statute authorizing municipalities to sell their lands not required for public use is *N. J. S. A.* 40:60–26. But *N. J. S. A.* 40:60–27 not only renders *N. J. S. A.* 40:60–26 inapplicable to park lands, it also provides that no municipality shall sell or dispose of any park lands or streets, except in exchange for other lands, contiguous to such park lands or streets, an area equal to or greater than the lands conveyed, and only for the purpose of straightening or rendering symmetrical the boundary or boundaries of said park lands or streets. Obviously *N. J. S. A.* 40:60–26 is inapplicable.

Defendants contend that *N. J. S .A.* 40:61–22.2 provides such authority when sufficient beach is "reclaimed." This statute reads:

"Whenever a municipality has reclaimed lands under water, fronting or abutting park lands and such reclaimed lands have been bulkheaded and filled and are now used for park purposes, the municipality may sell any part or parts, parcel or parcels of park lands not so

reclaimed whether contiguous or not contiguous to such reclaimed park lands; provided, that the total area of park land so sold shall not exceed in area the area of such reclaimed lands."

 I cannot agree with defendants that this statute provides the necessary authority. This enactment cannot possibly be applicable to lands of the nature or character with which we are dealing. In the first place, when one speaks of the shore along an ocean, the accretion of land by artificial means is not usually referred to as reclamation. Reclamation implies actually a filling in and bulkheading of lands thereafter, in order to prevent water from coming upon the land at all. Second, the statute, by its terms, provides for bulkheading of the "reclaimed" lands. This means preventing the ocean from coming upon same. What is contemplated in the case at bar is the bulkheading of only that part which the municipality intends to sell. Third, the statute refers to land "bulkheaded and filled." In the ordinary use of that word, one visualizes the filling in of swamplands or a creek or meadows; not the arrangement of fill on the seashore. Ocean shore lands and beaches are built up either by alluvion—that is to say, the washing up of sand or soil so as to form firm ground, or by dereliction, as when the sea shrinks below the usual water mark. Statutes should be interpreted according to the most natural and obvious import of the language, without resorting to subtle or forced construction for the purpose either of limiting or extending their operation. *Markey v. City of Bayonne*, 24 *N. J. Super.* 105, 114 (App. Div. 1952); *City Affairs Committee of Jersey City v. Division of Local Government, etc.*, 134 *N. J. L.* 198, 203 (Sup. Ct. 1946), aff'd. 134 *N. J. L.* 614 (E. & A. 1946).

*N. J. S. A.* 40:61–22.2 was adopted over 20 years after *N. J. S. A.* 40:61–1. It seems to be applicable to *N. J. S. A.* 40:61–1(d) which authorizes municipalities to acquire lakes and ponds and the banks and shores thereof.

*N. J. S. A.* 40:60–51.7 provides that whenever any municipality shall have acquired land for public purposes, and for

places of resort for public health and recreation, and shall thereafter have acquired other lands which the governing body deems to be better suited for the purposes of resort for public health and recreation, and shall have improved such other lands, it is authorized to sell the lands first acquired in accordance with the terms of said statute.

This statute does not authorize such sale as is contemplated by the ordinance under consideration. There is no finding in this ordinance that the governing body deems the lands to be acquired by accretion better suited for the purposes of resort for public health and recreation. Nor, it seems, could there be such bona fide finding. Additionally, this statute contemplates "that lands be improved." This likewise is not contemplated.

The only other statute dealing with the disposition by a municipality of park land is *N. J. S. A.* 40:184–27. This act in part provides:

"Whenever the board or body having the control and management of the public parks of any city in this State shall have determined, or shall hereafter determine, that any lands theretofore acquired in fee simple by such city for use as a public park, whether or not the same shall have been actually dedicated to such use, is no longer needed or desirable for public park purposes, it shall be lawful for the governing body of such city to sell such land * * *, *provided, however,* that no lands may be sold under the authority hereby conferred which * * * are located on the beach front of the Atlantic Ocean; * * *."

The issue is whether the lands in question were acquired in fee simple by the city "for use as a public park," and if so, if they are located on the beach front of the Atlantic Ocean within the meaning of this law.

As already noted, the area with which we are concerned is part of the general beach from the bulkhead to the ocean, no different in character, no different in composition and no different in its treatment by the municipality than any other part of the public beach contiguous to it. Persons using the strip of beach with which we are concerned have free access to and from the ocean without any obstacles except the supports or piling spaced at intervals to support

the boardwalk. Therefore, physically as well as from the standpoint of accustomed use, the area in question is located on the beach front of the Atlantic Ocean.

However, defendants contend that this area should not be considered as beach front within the meaning of this statute, because it lies north of the inland line. In effect they urge that only lands lying south of the inland line may be considered as beach front. I am compelled to reject this contention.

Nothing in the Act of 1894, *N. J. S. A.* 40 :179–98 *et seq.*, prohibits lands above the high water line from being considered as beach front. That statute only restricts the municipality from establishing the interior line further inland than the high water line or mark along the beach. *Crossan v. Ventnor City,* 80 *N. J. L.* 511 (Sup. Ct. 1910).

The Act of 1894, *N. J. S. A.* 40 :179–99, grants each municipality the option to establish an inland line. It is not mandatory that any municipality do so. Therefore it is conceivable that there are beaches and beach fronts in municipalities bordering the ocean which have not so established such a line. What is beach and beach front land is not related to the establishment or not of the inland line or the location of the high water mark.

The title to the strip in question is held in fee simple by the city. Therefore it conforms to the requirement of *N. J. S. A.* 40 :184–27 requiring such title.

I find that *N. J. S. A.* 40 :184–27 denies to a municipality the right to dispose of lands located on the beach front of the Atlantic Ocean which are used as public parks, whether or not they lie within or without the inland line established by the municipality.

Since none of these statutes extend to the city of Ventnor City the authority to sell the lands, it follows that the city may not sell the lands.

Accordingly judgment will be entered setting aside the ordinance and declaring that the city is without authority to sell the lands. No costs.