217 N.J. Super. 570 (1987)
526 A.2d 714
TOWNSHIP OF SPRINGFIELD, PLAINTIFF,
v.
BOARD OF EDUCATION OF THE TOWNSHIP OF SPRINGFIELD, DEFENDANT-RESPONDENT-CROSS-APPELLANT, AND GREEN SPRINGS ESTATES, INC., DEFENDANT-APPELLANT-CROSS-RESPONDENT.
BOARD OF EDUCATION OF THE TOWNSHIP OF SPRINGFIELD, THIRD PARTY PLAINTIFF,
v.
TOWNSHIP OF SPRINGFIELD, THIRD PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 31, 1987.
Decided May 12, 1987.
*572 Before Judges PRESSLER, BAIME and ASHBEY.
Richard L. Zucker argued the cause for appellant Green Springs Estates, Inc. (Lasser, Hochman, Marcus, Guryan and Kuskin, attorneys; Richard L. Zucker, on the brief).
*573 Yale L. Greenspoon argued the cause for respondent Bd. of Ed. of Tp. of Springfield (Fish, Field, Greenspoon & Olesnycky, attorneys; Yale L. Greenspoon, of counsel; Amy M. Sarracino and Michael S. Wittenberg, on the brief).
Anthony P. D'Alessio argued the cause for respondent Tp. of Springfield.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This protracted and procedurally complex litigation arises out of a contract for the sale of a portion of its Walton School property by the Board of Education of the Township of Springfield (board) to Green Springs Estates, Inc., (Green Springs). Green Springs appeals from that portion of the judgment which, although validating the contract, nevertheless required title to pass subject to the restrictive covenant in the deed by which the property had been conveyed to the board by the Township of Springfield. This restriction limited the use of the tract to public school and other public purposes. The board cross-appeals, claiming that the trial judge erred in not setting the sale aside. We are satisfied that the trial judge correctly concluded that the property remained subject to the restrictive covenant. We are, however, persuaded, for the reasons stated herein, that this conclusion compelled the corollary remedy of rescission of the sale.
The tract, approximately 25 acres in size, was conveyed to the board by the township in 1949. The deed included this provision:
The party of the second part [board] covenants and agrees that the premises hereby conveyed are restricted to use solely for public school purposes, athletic, recreation and accessory public uses.
The property, which came to be known as the Walton School tract, was used for school purposes by the board until 1983 when it determined that about half of it was no longer needed for school use. It accordingly adopted a resolution in August of that year so stating and authorizing the public sale of the *574 approximately twelve acres here in controversy, which also included the school building. The bid documents made no reference to the restrictive covenant and imposed no limitation based thereon on the prospective use of the property. The sale was, however, to be subject to easements and restrictions of record. Green Springs was the sole bidder at the sale, offering $1,055,000 for the tract. It was Green Springs' intention to use the property for residential development. The bid was accepted by the board by resolution adopted in October 1983, and a contract of sale was shortly thereafter executed by those parties. This litigation, as well as related judicial and administrative litigation, ensued.
In broad outline, the township, attempting to obtain a judicial invalidation of the sale, instituted this action. Initially, it challenged the sale only on the ground that the contract was void by reason of its failure to comply with N.J.S.A. 40:55D-55, which requires an agreement for the sale of a portion of a single tract to be expressly conditioned on subdivision approval. Although that basis of attack was ultimately obviated by an amendment of the contract by the board and Green Springs to so provide, the board itself subsequently decided to attempt to repudiate the contract, having concluded that the premises were indeed required for school use.[1] Thus, in May 1984, *575 shortly before the entry of a judgment dismissing all other remaining claims as against all other parties, who by that time included the individual board members, the board moved for leave to amend its cross-claim against Green Springs in order to allege procedural defects in the bidding process. The motion was granted and the controversy, in its then posture, was pretried. After the pretrial in June 1985, the board sought and was granted leave to file a third-party complaint against the township challenging the validity of its 1977 subdivision ordinance pursuant to which Green Springs had obtained subdivision approval in early 1984. This pleading was followed by an amended third-party complaint by which the board also challenged the township's zoning map and official map, claiming them to be in conflict with each other and with the land use element of the master plan by having designated the Walton School tract as a residential rather than a public use. The township by its answering pleading finally raised the issue of the restrictive covenant and sought to enjoin the sale by the board to Green Springs on the basis thereof.
Following trial, the judge, by letter opinion, concluded that (1) the bidding process was not materially defective; (2) the board's assertion of its continuing need for property for school use was precluded by reason of the Commissioner's of Education prior determination, in a contested case, that the board's earlier decision that it did not need the property was not arbitrary or unreasonable; (3) the restrictive covenant was binding on Green Springs both by reason of N.J.S.A. 18A:20-10 and because it constituted a restriction of record running with the land; (4) the official map was invalid as to this property, and (5) the subdivision ordinance was valid. A conforming judgment was entered.
Before considering the substantive issues, we address the procedural issues raised by Green Springs, namely, the propriety of the trial judge's orders permitting the board to file the amended cross-claim against it which effectively reinstituted *576 the litigation and in permitting, after entry of the pretrial order, the raising by the township of the restrictive-covenant issue. While we recognize the lateness of the board's challenge to the sale as well as the lateness of the township's belated realization of the import of the restrictive covenant, we are persuaded, particularly in view of the public importance of these issues, that the trial judge did not mistakenly exercise his discretion in permitting these amendments to the pleadings. R. 4:9-1 requires leave to amend pleadings to be "freely given in the interest of justice." See, e.g., Gibson v. 1013 North Broad Associates, 172 N.J. Super. 191, 195 (App.Div. 1980); Blair Academy v. Blairstown, 95 N.J. Super. 583, 594 (App.Div. 1967), certif. den., 50 N.J. 293 (1967). We further note that Green Springs was not unduly prejudiced by the late pleadings. We also point out that the action was still technically pending at the time the board first moved for leave to assert its affirmative claim against Green Springs, and in any event, Green Springs fully participated in the trial of these belated issues, thereby subjecting itself to the court's jurisdiction. Under these circumstances and considering both the extent of the public right in this property created by the restrictive covenant and the extent to which that right was endangered by the board's action in purporting to sell it free of the covenant, we have no doubt that the trial judge would have mistakenly exercised his discretion had he not permitted these late pleading amendments.
With respect to the substantive issues, we are satisfied that the restrictive covenant is the single dispositive issue, and we therefore do not consider or pass upon any of the others. We are in full agreement, substantially for the reasons stated by the trial judge, that the restrictive covenant is a binding covenant running with the land. We disagree, however, with his apparent conclusion that the property was nevertheless conveyable by the board, subject to this restriction, simply based on its adoption of a resolution pursuant to N.J.S.A. *577 18A:20-5 reciting that the property was no longer suitable or convenient or needed for school purposes.[2]
To begin with, in our view the procedure of N.J.S.A. 18A:20-5 is not applicable to property received by the board by way of a deed conveying land for the express purpose of school use. N.J.S.A. 18A:20-10 specifically provides that
Whenever any district has heretofore received a conveyance of lands subject to a recital or condition in the deed of conveyance, substantially providing that the land and premises conveyed are intended to be conveyed for the express purpose of building a public schoolhouse on the same and for the uses and purposes of a public school for said district, and the lands so conveyed have been held by the district for more than 30 years, and no public schoolhouse has ever been built or has stood for the past 20 years thereon, and the board of education of the district shall determine that the lands are not required for school uses and purposes, the board may sell and convey the said lands and make, execute and deliver a valid conveyance thereof, free of any such recital or condition and thereby vest a title in fee simple absolute in the grantee as fully as though such recital or condition was not contained in the deed of conveyance to the school district; provided, that no proceeding or action shall be commenced against said school district for the recovery of said lands or the enforcement of such recital or condition within a period of one year from the date of conveyance of said lands by the board.
By clear implication, property to which N.J.S.A. 18A:20-10 is applicable may not be sold by a school board free of the use restriction encumbering the conveyance prior to the expiration of the time periods therein prescribed.
More significantly, a restriction in a deed to a public body limiting the use of the conveyed parcel to a specified public purpose constitutes a dedication, in the broad sense, which cannot be unilaterally abrogated by the public grantee at least so long as the property, as a practical and functional *578 manner, is amenable to that use. See generally Lander v. Village of South Orange, 58 N.J. 509 (1971). And see Cunningham & Tischler, "Dedication of Land in New Jersey," 15 Rutgers L.Rev. 377 (1961). As further noted, by Justice Hall in Lander, supra, 58 N.J. at 516 n. 4, "Principles of interpretation will not vary greatly, however, whether the public use is created by a deed of conveyance or by dedication in the strict sense." And foremost among these principles is the proposition that the right of the public to the dedicated use is irrevocable, at least until there has been a formal vacation or abandonment by a duly constituted authority in the precise manner prescribed by law. See, e.g., Biglin v. West Orange, 46 N.J. 367 (1966); Priory v. Borough of Manasquan, 39 N.J. Super. 147 (App.Div. 1956); Township of Lower v. Reeves, 14 N.J. Super. 180 (Ch. Div. 1951).[3]
We need not here consider how the public use vouchsafed by the restrictive covenant in the township's deed to the board could be properly vacated at such time as the property were no longer required therefor.[4] The fact remains that the board could not have either vacated the dedication or released or extinguished the restrictive covenant merely by a resolution of sale adopted pursuant to N.J.S.A. 18A:20-5, which does not *579 apply to a title so encumbered as here. It is perfectly clear that a public body cannot act as an individual when dealing with its real property but that it must do so in careful conformance with specific statutory authorization. See Anschelewitz v. Belmar, 2 N.J. 178, 183 (1949); City of Jersey City v. Roosevelt Stadium, 210 N.J. Super. 315, 328 (App.Div. 1986); Van Ness v. Borough of Deal, 139 N.J. Super. 83, 97 (Ch.Div. 1975), rev'd of other grounds 145 N.J. Super. 368 (App.Div. 1976), certif. granted, 74 N.J. 262 (1977); Weehawken Env. Comm., Inc. v. Tp. of Weehawken, 161 N.J. Super. 381, 391 (Law Div. 1978); Skowysz v. City of Ventnor, 110 N.J. Super. 340, 348 (Law Div. 1969), aff'd o.b., 56 N.J. 168 (1970). We therefore conclude that the contract of sale was illegal because it violated N.J.S.A. 18A:20-10 and because it abrogated the dedication to public use effected by the covenant. Obviously, ownership of the property by a private person could hardly preserve the dedication since a private person does not, nor can he, use his property for public school purposes, and he could obviously not be made to do so. The judicially ordered conveyance subject to the restriction was, therefore, an illusory fiction in every legal, functional and practical sense.[5]
Having concluded that the contract of sale is illegal, we are satisfied, in view of the board's present desire to continue the school use and the ease of restoration of the status quo ante, that rescission is the only available remedy.[6] We further point out that even if the contract were not illegal, *580 the board would be entitled to rescission on the ground of mutual mistake of both fact and law. Thus, the board entered into the contract in the mistaken belief that it could convey free of the restriction and Green Spring entered into it in the mistaken belief that it could purchase free of the restriction and then use the property for residential development. It is, however, well settled that a mutual mistake, whether of fact or law, will justify rescission of a contract provided that neither party, as here, is irrevocably or substantially prejudiced. See, e.g., Edelstein v. Asbury Park, 51 N.J. Super. 368, 391-392 (App. Div. 1958); Bowen v. Pursel, 109 N.J. Eq. 67 (E. & A. 1931); Freichnecht v. Meyer, 39 N.J. Eq. 551 (E. & A. 1885); Green v. Morris and Essex Railroad Co., 12 N.J. Eq. 165 (Sup.Ct. 1858), aff'd sub nom Morris and Essex Railroad Co. v. Green, 15 N.J. Eq. 469 (E. & A. 1862).
That portion of the judgment appealed from validating the contract of sale is reversed, and we remand for entry of judgment of rescission. The balance of the judgment appealed from is vacated.
NOTES
[1] The board's original determination that it no longer required the property for school use was challenged by way of a contested case before the Commissioner of Education, and the Administrative Law Judge who presided at the trial concluded that the board had not arbitrarily or unreasonably exercised its discretion in having so concluded. As a result of a change in the composition in the board's membership and the board's consequent reappraisal of the issue, it concluded that there were a variety of educational uses to which it could put the property, including implementation of its early childhood program, its after-school child care program, special educational services, and to ensure against school population growth. This last it anticipated as a result of the increase in the municipal population attendant upon Green Springs' extensive residential development in the municipality. At the trial of this action a number of witnesses, including the school board president, a school board member, and the superintendent of schools, all testified as to the board's present need for the property for educational purposes.
[2] N.J.S.A. 18A:20-5 provides in full as follows:

The board of education of any district by a recorded roll call majority vote of its full membership may dispose, by sale or otherwise, in the manner prescribed in this chapter, of any lands or any rights or interest therein, owned by it, which cease to be suitable or convenient for the use for which they were acquired or which are no longer needed for school purposes, whether acquired by purchase or through condemnation proceedings and the purchaser thereof shall acquire title thereto free from any use or purpose for which it may have been acquired by the board.
[3] We see no difference in the effect and nature of a restrictive covenant whether imposed by a private grantor or a public grantor. See N.J.S.A. 40A:12-19, authorizing a "dedicated" conveyance by a municipality to a school board for public educational purposes.
[4] As a matter of traditional principles, non-user of dedicated lands by vacation or abandonment results in the reversion of title thereto to the dedicator. See generally Cunningham & Tischler, supra, 15 Rutg.L.Rev. at 409-413. Thus, the board's non-use of the property or declaration of non-need might arguably result in a reversion of title to the municipality. Moreover, although the school laws do not appear to include comparable statutory vacation authorizations as are applicable to municipalities, see, e.g., N.J.S.A. 40:60-32, it would nevertheless seem that a school board, even if it had the power of vacation, would have to exercise it at least by a public hearing. On the other hand, it might be that only the municipal grantor would have the power to release the use restriction in its own deed of conveyance. See N.J.S.A. 40:60-51.2.
[5] The record indicates that prior to the attempted sale here the board did in fact sell a very small gore of land constituting part of the original Walton School property to private grantees for residential use. While we need not pass on the validity of that conveyance, we nevertheless point out that that conveyance could have no precedential validating effect on the illegal conveyance proposed here.
[6] We need not consider whether or not as a general proposition a school board may unilaterally rescind a contract of sale on the ground that it has changed its view respecting the need of the property for school purposes.