THOMAS F. MCCRAN, attorney-general, for and in behalf of the State of New Jersey, informant,

v.

PUBLIC SERVICE RAILWAY COMPANY, defendant.

[Decided September 17th, 1923.]

1. A preliminary mandatory injunction will issue to compel the restoration of a *status quo ante* in aid of a suit at law where irreparable damage would result from its being withheld.

2. Where a *mandamus* is sought in a court of law to compel a public utility corporation to perform its duty to the public, the court of chancery will enjoin the performance of that duty pending the suit at law.

3. It is not a defence that the company cannot operate at a profit; that is not the test; the duty resting upon a *quasi*-public corporation must be performed or its privileges and franchises must be surrendered; it cannot discharge its duty on and off, as it may find it profitable to do so.

4. It appears that a receiver may be appointed for a public utility corporation to discharge its duty to the public in the event of its not obeying the mandate of the court.

On information. On application for mandatory injunction in aid of suits at law.

*Mr. Thomas F. McCran,* attorney-general, and *Mr. William Newcorn,* assistant attorney-general, for the state.

*Mr. Robert H. McCarter, Mr. Frank Bergen, Mr. Merritt Lane, Mr. E. Ambler Armstrong* and *Mr. William H. Speer,* for the defendant.

WALKER, CHANCELLOR.

The attorney-general has filed an information on behalf of the state, in which he shows that the defendant company was organized and created under a consolidation agreement dated August 20th, 1907, between sundry street railway companies, and shortly thereafter it entered into an agreement of consolidation with certain other street railway companies operating in the northern part of the state, and thereby became possessed of all rights, privileges and franchises, subject to all restrictions, disabilities and duties of the corporations so consolidated. Under the act of consolidation and merger it was provided that all rights, privileges and franchises, and property of each of such corporations, was transferred to and vested in such new corporation; and that it has also acquired other street railways by long term leases, thus forming a united and complete system of about eight hundred and fifty miles of street railway tracks in one hundred and forty-two municipalities, and took possession of such railways and operated such system from the dates of such leases and entry upon the properties respectively, until August 1st, 1923, carrying in recent years about one million passengers per day; that prior to August 1st, 1923, employes of the defendant company voted that a strike should go into effect on said date unless the terms and demands of the employes were met or conceded by the corporation, which it refused; such strike went into effect, and the company has failed to operate its cars from that date up to the present time, notwithstanding the duty imposed upon it, a common carrier, having franchises from the state to provide proper service for the citizens thereof, and more particularly for the inhabitants in the communities served by such corporation. The information also charges that the failure of the defendant to operate its cars deprives the state and its municipalities of revenue to which it is lawfully entitled by way of taxes on its gross in-

come, and jeopardizes the investments of its bondholders and stockholders, and those of its subsidiaries; that it deprives the citizens, and more particularly the inhabitants of the municipalities, of the service to which they are entitled by the company; and that the corporation has obligations which it cannot meet unless its road is operating, thereby working irreparable injury upon the state, its subdivisions and citizens. Further, that the board of public utility commissioners of this state on August 9th, 1923, served a notice upon the defendant of a hearing in the matter of its refusal to operate its road, and, after hearing, and on August 14th, 1923, made an order directing the defendant forthwith to furnish adequate and proper service and keep and maintain its property and equipment in such condition as to enable it to do so; that the defendant failed to comply with the terms of said order, and on August 17th, 1923, the board made application to the New Jersey supreme court for a writ of *mandamus* to compel the company to obey the said order, and on the date last aforesaid an alternative writ of *mandamus* was allowed, and served upon the defendant company on August 28th, to which the company filed an answer wherein it set forth that by reason of the increased cost of operation it was impossible for it to comply with the order of the board. which proceedings are pending and undetermined; that by reason of the company possessing exclusive grants to operate its railway system, it is bound to perform that duty until it has lawfully surrendered, suspended or abandoned its franchises and privileges by the legally expressed consent of the state. This information further shows that on September 4th, 1923, the attorney-general filed an information for a *quo warranto,* inquiring by what right the defendant company exercises the franchises and privileges acquired by it at the time of the consolidation and merger agreements aforesaid, and by what right it refuses to operate its cars and perform the duty required of it under and by virtue of the privileges and franchises acquired by it as aforesaid.

The information before me prays that in aid of the *mandamus* and *quo warranto* proceedings mentioned, and in order

to preserve the rights of the public, that a mandatory injunction be issued requiring the defendant company forthwith and pending the determination of said suits at law, to resume the operation of its railways and render service to the citizens of New Jersey; or, in the alternative, upon the continued refusal of the defendant company to operate its railways and discharge its public duty as aforesaid, that a receiver be appointed to take charge of the property of said company and operate the same until the final determination of the actions at law now pending. This succinctly states the issue tendered by the attorney-general on behalf of the state.

The defendant company has answered, and while this is not a final hearing, the case has been fully submitted on pleadings and affidavits on both sides. The gravamen of the answer is that the company cannot operate without loss, and it claims that therefore it should not be compelled to operate at all. That present operation—that is, operation pending a settlement of its dispute with its employes, would be at a loss, may be conceded for the purpose of the decision of the matter before me.

In arriving at a determination in this matter, I deem it unnecessary to consider the question of the prospective loss of taxes to the state or municipalities, or of interest of the bondholders or dividends of stockholders of the company. The question transcends any such considerations and, to my mind, turns upon the single question of the power of this court to grant the injunction prayed for because of the public duty owed by defendant company to the citizens of this state, and that irrespective of whether such operation can be carried on with profit or with loss.

*Mandamus* is the appropriate remedy to compel a street railway company to operate its road for the benefit of the public. *Hamilton Township* v. *Mercer County Traction Co., 88 N. J. Law 485.* In this case in the court of errors and appeals (*90 N. J. Law 531*), Mr. Justice Swayze said (at *p. 534*), that the writ of *mandamus* is used to enforce a public duty which may sometimes grow out of a contract as well as out of a statute, citing *Wilbur* v. *Trenton Passenger Railway*

*Co., 57 N. J. Law 212; Bridgeton* v. *Traction Co., 62 N. J. Law 592; Rutherford* v. *Hudson River Traction Co., 73 N. J. Law 227; Pleasantville* v. *Atlantic City Traction Co., 75 N. J. Law 279; Camden* v. *Public Service Railway Co., 82 N. J. Law 246.* Here the duty arises out of statutory and charter obligation.

It is true that in *McCran, Attorney General,* v. *Western Union Telegraph Co., 94 N. J. Eq. 281,* I held that *mandamus* and not mandatory injunction is the proper remedy to compel the performance of a public duty enjoined upon a *quasi*-public corporation; and so it is. But in the same case I also held that an injunction would issue to preserve the status pending the *quo warranto* suit at law, for, if it were not for the injunction, the public duty owed by the defendant to the state would not be performed during the litigation over it. And that is this case; unless a distinction is to be made between an injunction to preserve an existing status and one to restore a *status quo ante.* As a fact, the injunction in the *Western Union Case* amounted to a mandatory one, because the company had refused to perform the duty of receiving and transmitting messages of public officers free of charge under the statute. And while the writ was couched in negative terms and restrained the company from refusing to accept and transmit the messages, because that was the prayer of the information in that case, nevertheless, the injunction compelled the corporation to receive and transmit them, and was, consequently, in effect, a command to do an affirmative act.

Chancellor McGill in *National Docks Railway Co.* v. *Pennsylvania Railroad Co., 54 N. J. Eq. 10* (at *p. 16*), said that his understanding was that our courts have always recognized the right of a court of equity in a proper case to grant a mandatory injunction after preliminary hearing, even though that be the whole relief sought, citing numerous cases.

In granting temporary injunctions to protect easements, as in other cases, the court does not take jurisdiction for the purpose of settling the rights of the parties permanently, but simply to preserve the property until the legal title to it is established. The title which the plaintiff must show in such

a case is not, of course, an incontestable one; he makes out a sufficient case when he satisfies the court that his claim is a substantial one and that there is reasonable ground for doubting the validity of the title of his adversary. The injury against which protection is sought is that which is likely to occur before the question of title between the parties can be settled—that is, in the limited time before a decision of the pending suit can be had. *Pom. Eq. Jur. (2d ed.)* § *1970*, citing *Fulton* v. *Greacen, 36 N. J. Eq. 216; Todd* v. *Stauts, 60 N. J. Eq. 507.* In the latter case an injunction was denied because irreparable injury was not shown. See *p. 513.* The instant case is not one of easement, but the principle applies.

Where a gas company, having a franchise and virtual monopoly, demands of a city an unreasonable price for gas, the city may offer a reasonable price; and if the gas company refuses to furnish at that price the city may maintain *mandamus* if the supply has not been commenced and may sue in equity to enjoin the stoppage of a supply then being furnished. *Public Service Corporation* v. *American Lighting Co., 67 N. J. Eq. 122.* See also *Public Service Gas Co.* v. *Newark, 86 N. J. Eq. 384, 388.*

*Jacquelin* v. *Erie Railroad Co., 69 N. J. Eq. 432,* is relied upon by defendant because there Vice-Chancellor Garrison refused an injunction compelling the railroad company to maintain a station, holding that the remedy was by *mandamus,* and said that the authority of courts to compel a railroad company to maintain a station where not required to do so by charter or statute was not so clear as to justify the granting of a preliminary injunction restraining the discontinuance of such a station; but (at *p. 444*) he also said that courts will compel the completion of a road if the charter clearly imposes that duty upon it, and they will also compel *the operation of the road and other clear duty enjoined upon the corporation.* This case would appear to be an authority for the contention of the state.

That a preliminary mandatory injunction may be issued in a proper case has the sanction of the court of errors and appeals. See *Bailey* v. *Schnitzius, 45 N. J. Eq. 178,* where it

was held that a mandatory injunction was rarely granted before final hearing, and will only be ordered to prevent extreme or very serious damage. In other words, that it will be ordered in such circumstances.

That a preliminary mandatory injunction will lie in a proper case has been decided over and over again in this court. See *Whitecar* v. *Michenor, 37 N. J. Eq. 6; Pennsylvania Railroad Co.* v. *Kelley, 77 N. J. Eq. 129; Barna* v. *Kirczow, 71 N J. Eq. 196, 201; Savage* v. *Port Reading Railroad Co., 73 N. J. Eq. 308; National Docks Railway Co.* v. *Pennsylvania Railroad Co., 54 N. J. Eq. 10, 16.*

In *Hodge* v. *Giese, 43 N. J. Eq. 342,* Vice-Chancellor Van Fleet held that a court of equity may protect legal rights in real estate where the right, though formally denied, is yet clear on facts, which are not denied, and, according to legal rules which are well settled, and the injury against which protection is asked is irreparable; that an injury is irreparable which is material, and which cannot adequately be redressed by pecuniary damages; that contrary to the general rule, a mandatory injunction may issue at the inception of a suit for the protection of an easement and other rights of like nature.

The important question is, May this court lay a public utility corporation under a mandatory injunction to operate its works for the benefit of the public where to do so would appear to entail a loss upon the company? The only cases in this state which I have found that bear upon the question are *Public Service Corporation* v. *American Lighting Co.* and *Public Service Gas Co.* v. *Newark, supra;* and there the question was as to a reasonable price for gas, and it was held that injunctions would issue to compel the companies to serve the public with gas for lighting at a reasonable price where the companies demanded more. But in Georgia and New York it has been held that a utility corporation could be compelled to serve the public even if that service would be unprofitable.

In *Savannah, &c., Co.* v. *Shuman, 91 Ga. 400,* the court held that so long as the corporation retains its franchise it

will not be allowed to urge as an excuse for failing to perform any duty required of it by its charter that service would be unprofitable. It cannot consistently keep the franchise and reason that such performance would be unremunerative. And in *People* v. *New York Central and Hudson River Railroad Co., 28 Hun* (*N. Y.*) *543,* the court said that the question was, could a railroad corporation refuse or neglect to perform its public duties upon a controversy with its employes over the cost and expense of doing them; that the question admitted of but one answer; that the excuse had no validity in law; that the duties imposed must be discharged at whatever cost; that they could not be laid down or abandoned or suspended without the legally expressed consent of the state; that the trusts were active, potential and imperative and must be executed until lawfully surrendered.

After all, that is the test. The duty resting upon a *quasi*-public corporation must be performed or its privileges and franchises must be surrendered. It cannot assume to discharge its duty to the public on and off, as it may find it profitable to do so. And this apparently has the sanction of the supreme court of the United States, for in *Brooks-Scanlon Co.* v. *Railroad Commission of Louisiana, 251 U. S. 396; 64 L. Ed. 323* (at *p. 326*). that court, while holding that a carrier cannot be compelled to carry on business at a loss (a question of fact which doubtless concerns the public utility commission and the supreme court on *mandamus*), nevertheless observed that "it is true that if a railroad continued to exercise the power conferred upon it by a charter from the state, the state may require it to fulfill an obligation imposed by the charter, even though fulfillment in that particular may cause a loss." And that is the point I make, for, it seems to me, on an application for injunction to restore the status, it is not for me to make an exhaustive investigation of facts, and to adjudicate whether or not the company could be operated at a profit, but that it is enough if it appears that it is obliged to operate under a charter which it has not surrendered. See also *Atlantic C. L. R. Co.* v. *North Carolina Corporation Com., 206 U. S. 1* (at *p. 26*); *51 L. Ed. 933*

(at *p. 945*), where the court said that the primal duty of a carrier is to furnish adequate facilities to the public, and that duty may well be compelled, although by doing so, as an incident, some pecuniary loss from rendering service may result. To the same effect is *Wolf Packing Co.* v. *Court of Industrial Relations* (*U. S. Sup. Ct. Adv. Op. 756*), *762*. In my judgment this is the view that I should adopt on the application before me, leaving to the supreme court the ultimate decision as to the reasonableness or unreasonableness of rates on final hearing on *mandamus*.

The condition with which the court is dealing is appalling. I have never known anything like it to exist in this state. To say that in its presence there is no court competent to give needed prompt relief is to assert that there is a defect in the law itself. If the defendant can cease to operate its lines for the benefit of the public under a charter which requires it to do so (which charter is sought and received), then the great steam railroads, even the transcontinental roads, can do so, and thus paralyze transportation business over a wide territory, to the untold loss and inconvenience of a suffering public.

Now, in order to grant relief, admittedly, the damage must be extreme and serious; it must be material and irreparable. It is all these and more. It is not an answer to say that the company cannot operate at a profit, and therefore it should not be obliged to run at all. The answer to that answer is: It stands still at a loss, and if it stands still long enough it will be absolutely ruined. This would ultimately result in an insolvency receiver, who would be directed to operate the road under order of the court. Such an ending would be disastrous to those owning the bonds and stock of the company and to its other creditors, unless the property at receiver's sale brought sufficient to discharge all its obligations in full, which is not likely. No one hopes more than I do that that calamity will never befall this great corporation, with its numerous security holders. Nor do I think that ordering operation will have that effect. I think, on the contrary, that the effect will be to stimulate negotiations to

settle the many difficulties with which the company is confronted. But, be that as it may, I think it my duty to order the injunction prayed for to restore the *status quo ante* in aid of the suits at law.

If the injunction were not obeyed then it appears the informant would be entitled to the appointment of a receiver, under the general equity powers of the court, to carry out its mandate by operating the road. See *Stockton* v. *Central Railroad Co., 50 N. J. Eq. 489.* And the attorney-general could make an application to that end.

It should be stated in closing that the defendant objects that the informant is not entitled to relief in this court respecting the matters set forth in the information, and prays the same benefit and advantage as though it had moved to strike out the information in conformity with the present practice substituted for demurrer. The views which I have above expressed lead to a denial of this application.

Mandatory injunction accordingly.