Rogers Locomotive and Machine Works v. Erie Railway Co.

THE ROGERS LOCOMOTIVE AND MACHINE WORKS *vs.* THE ERIE RAILWAY COMPANY and others.

1. Railway companies have delegated to them, as part of their franchises, much of the sovereign power of the state, in consideration of their providing the means of commerce and intercourse by constructing the roads which are the avenues of that commerce, and performing the additional duty of common carriers when authorized; and if so authorized, they are obliged to transport all merchandise and passengers on the terms fixed in the grant through which they obtain their franchises.

2. Where the injury to the complainant is of that nature that while there may be a remedy at law, as by recovery of damages, yet it cannot be adequately relieved by suits for damages, for the reason that it is continually recurring, and will require continued and repeated suits and litigation, a preliminary injunction will be granted to restrain it.

3. An injunction will not be granted to compel a common carrier to transport goods at the rates fixed by law; but it will issue to prevent a railway company, bound by law to transport goods, from entering into an agreement not to transport them at the rates fixed by law.

4. A complainant cannot have any relief against a railway company, based on allegations of dereliction in duty to the stockholders.

5. A mandatory injunction will not be ordered on a preliminary or interlocutory motion, but only upon final hearing, and then only to execute

the decree or judgment of the court. It is only in cases of obstruction to easements or rights of like nature, that maintaining a structure erected and kept as the means of preventing their enjoyment will be restrained, and the structure ordered to be removed as part of the means of restraining the defendant from interrupting the enjoyment of the right.

This was a motion for a preliminary injunction. The argument was had upon a rule to show cause upon the bill filed and an affidavit of James Fisk, jun., in reply to the allegation of the bill as to the insolvency of the Erie Railway Company.

The bill sets forth that the Erie Railway Company, by virtue of the provisions of the charter of the Paterson and Hudson River Railroad Company, of the lease of that road, and the acts of the legislature giving validity to that lease, and authorizing it to finish and extend that road to the Hudson river, and confirming the re-organization of the Erie Railway Company under its present name, became a common carrier between the city of Paterson and the present termination of its railway near the Hudson river, at the Long Dock; that it was bound to carry freight from Paterson to Long Dock at the rates fixed in these acts, which, for a locomotive engine of the size usually made and sent away by the complainants, would amount to $31.80 for each locomotive. That the company or some of its directors have devised a scheme for the purpose of illegally increasing the rate to be charged for such transportation; that they procured the company to be chartered by the name of the "Union Locomotive Express Company," with power to forward and carry locomotives and other property, and that the Erie Railway Company or its stockholders or directors are using this express company, and combining with its directors, for the purpose of increasing the rates of transportation from Paterson to Long Dock, and that it has entered into an agreement with the express company that it should have the exclusive right of transporting locomotives over the road. That the express company have the power to charge for forwarding

without any limit as to amount, and do actually charge $250 for transporting each locomotive, and assume only the liability of forwarders, and the Erie Railway Company refuses to accept for transportation at its depot at Paterson any locomotive to be transported to Long Dock, or to transport the same, unless through the express company. That the complainant built two trucks, on which it was in the habit of placing its engines and drawing them over the street railway from the manufactory to the depot of the Erie Railway Company at Paterson, which were suitable to run upon that road, and which could be taken to Long Dock with the locomotives thus loaded upon them. That the Erie Railway Company, when these trucks so loaded were last tendered to it for transportation, caused them to be taken over its road in the opposite direction, into the state of New York, and detains and keeps them there, so that the complainant has no means to offer its locomotives to the Erie Railway Company for transportation, and that this is done intentionally to carry out the fraudulent combination with the express company, so that the latter must be employed, at their exorbitant rates, to carry all the locomotives; and that new trucks cannot be constructed or provided under several months.

The bill further alleges that the manufacture of locomotives has become a large and important business in Paterson, and that the complainant and others have established their works there on faith of the means of transportation provided by law over the railway of the defendants; that being compelled to pay such sum for transportation will compel them to add the amount to the price of their locomotives, and will injure their business in competition with other establishments, and omission to deliver would make them liable to damages.

The bill alleges that this combination of the Erie Railway Company is a fraud upon the stockholders, because they receive by the agreement only $10 for each locomotive transported by the express company, when, by law, they would be entitled to receive, and would receive from the complain-

ant and others, more than three times that amount for the same service, if performed directly for them.

· The bill prays for an injunction to direct and compel the ·Erie Railway Company to return the two trucks to Paterson into the possession of the complainant, and to transport to the wharf, at Long Dock, all locomotive engines of the complainant, that may be delivered at the depot at Paterson, at the rates prescribed by law, and to direct and compel it to perform its duty as a common carrier; also to restrain it from removing the complainant's trucks out of its possession, and from preventing it from obtaining possession thereof, and restraining the other defendants, that is Jay Gould, James Fisk, jun., the Union Locomotive Express Company, N. Marsh Kasson, James G. Dudley, Henry J. Smith, and C. Valletta Kasson from entering into any agreement or doing anything to prevent or hinder the Erie Railway Company from transporting the locomotives of the complainant over its road.

The bill charges that the Union Express Company was got up by Jay Gould, James Fisk, jun., and Frederick A. Lane, three of the directors of the Erie Railway Company, in combination with N. Marsh Kasson, James G. Dudley, Henry J. Smith, C. Valletta Kasson, and P. K. Randall, as a contrivance to shift the duties of common carriers from the Erie Railway Company, and to enable the defendants or some of them, to make illegal and exorbitant charges for transportation.

*Mr. A. B. Woodruff*, in support of the motion.

*Mr. L. Zabriskie*, contra.

1. It is beyond the *office* of an injunction to compel the continuous performance of a duty. Injunctions are granted to restrain, but not to compel an act to be done. Mandatory injunctions are sometimes granted to carry into effect decrees for specific performance, and they have often been granted to restrain the continuance of unlawful erections.

But no case can be found where a preliminary injunction like that prayed for in complainant's bill has ever been granted. *Hilliard on Inj.*, § 5, *p.* 3 ; *Waterman's Eden on Inj.*, *p.* 388 ; *Ryder* v. *Bentham*, 1 *Ves.* 543 ; *Anonymous*, 1 *Ves.*, *jun.*, 140 ; *Blakemore* v. *Canal Co.*, 1 *Myl. & Keene* 154 ; *Milligan* v. *Mitchell*, *Ibid.* 446 ; *Att'y-Gen.* v. *Manchester and Leeds Co.*, 1 *Railway Cas.* 436 ; *Drewry on Inj.*, *p.* 260 ; *Hooper* v. *Brodrick*, 11 *Sim.* 47 ; *Akrill* v. *Selden*, 1 *Barb. S. C. R.* 317 ; *Deere* v. *Guest*, 1 *Myl. & Craig* 516.

It has repeatedly been decided that a court of equity will not compel an actor to act at a particular theatre, according to agreement. *Kemble* v. *Kean*, 6 *Sim.* 333 ; *Kimberley* v. *Jennings*, *Ibid.* 340 ; *De Rivafinoli* v. *Corsetti*, 4 *Paige* 264 ; *Hamblin* v. *Dinneford*, 2 *Edw. C. R.* 529.

The cases where mandatory injunctions have been granted relate to unlawful erections of buildings, &c., and to the unlawful use or obstruction of water-courses ; and here even they do not direct a thing to be done, but in effect only cause a thing to be done, by restraining the continuance of some unlawful act or obstruction. Such are the following cases : *Robinson* v. *Byron*, 1 *Bro. C. C.*, *App.* 588 ; *Lane* v. *Newdigate*, 10 *Ves.* 193 ; *Rankin* v. *Huskisson*, 4 *Sim.* 13 ; *Spencer* v. *London & B. R. Co.*, 8 *Sim.* 193.

The case of *Ransome* v. *Eastern Co's R. Co.*, 1 *C. B.* (*N. S.*) 437, and the cases in 6 *C. B.* (*N. S.*) 639, and 12 *C. B.* (*N. S.*) 758, are all cases where relief of the sort prayed for in this case has been granted under provisions of "The Railway and Canal Traffic Act." (17 and 18 *Vict.*, *ch.* 31 ; 1854.)

2d. There is no irreparable injury shown by complainant's bill. The only injury to complainants is, that they have to pay a larger price for transportation of locomotives than, as they allege, they are bound to pay. It is true they allege that corporate defendant is *likely to become insolvent.* Where trespass or irreparable injury to property is threatened, proof of defendant's insolvency will often lead the court

to prevent the mischief, but it does not follow that the court will, by its injunction, compel a man to *perform* his contract or legal duties on the mere allegation of insolvency. But there is no assertion of actual insolvency. It is a mere allegation in the bill that defendant is likely to become insolvent, and is only sworn to in a general way upon belief, and is altogether insufficient. *Brundred* v. *Paterson Machine Co.*, 3 *Green's C. R.* 294.

Besides, the insolvency of defendant is distinctly denied by the affidavit of its comptroller.

Nor will an injunction be granted where courts of law can give compensation in damages. *Morris Canal* v. *Central R. Co.*, 1 *C. E. Green* 420; *Holsman* v. *Bleaching Co.*, 1 *McCarter* 335; *West* v. *Walker*, 2 *Green's C. R.* 279; *Bonaparte* v. *Camden and Amboy R. Co.*, 1 *Baldwin C. C. R.* 205; *Thompson* v. *Matthews*, 2 *Edw. C. R.* 212; *Canal Co.* v. *Railroad Co.*, 9 *Paige* 323.

3d. The foundation of complainant's right of injunction depends on the construction of a statute. It is the act of February 21st, 1856, authorizing the New York and Erie Railroad Company to extend their road from line of the Paterson and Hudson River Railroad to the Hudson river. The defendant contends that this act does not confine it to the rates of charges prescribed by the charter of the Paterson and Hudson River Railroad Company, and for which charges complainant contends defendant is bound to carry its locomotives.

The construction of this act, and complainant's right dependent upon it, never having been settled by a court of law, this court will not grant its injunction until it is so settled. *Mayor of Cardiff* v. *Cardiff Water Works*, 4 *De Gex & Jones R.* 596; *Shrewsbury R. Co.* v. *London R. Co.*, 3 *M. & Gor., p.* 70; *Morris and Essex R. Co.* v. *Prudden*, Court of Appeals, March Term, 1869.

The same rule was acted upon by this court in the case of *Babcock* v. *N. J. Stock Yard Co.*, ante 296.

THE CHANCELLOR.

If the allegations of the bill are true, and they are supported by the affidavits annexed, and are not denied by answer or affidavit, they present a flagrant case of refusal to perform the duties imposed upon it by law, and for which its franchises were granted, by a corporation public in its object and almost such in its character. Railway companies have delegated to them as part of their franchises much of the sovereign power of the state, in consideration of their discharging part of what are the proper duties of government, that is providing the means of commerce and intercourse by constructing the roads which are the avenues of that commerce. And when being authorized they assume to operate these roads, they have devolved upon them in consideration of that franchise the additional duty, which is not one of the proper functions of the government, of common carriers, and are obliged to transport all merchandise and passengers, on the terms fixed in the grant through which they obtain their franchises. In this case the wrong is attempted to be aggravated by the charge that it is done through a corrupt combination between the directors of the company and others, by which these directors, in violation of their duties and trust, conspire for their own emolument to cause the company under their control to refuse to perform the duties imposed on it by law, in such manner that the public are injured by extortionate charges, and the stockholders defrauded of their just dues; and also in such manner that the state can cause the valuable franchises, of which they are possessed as a right of property, to be annulled and forfeited for the willful violation of the compact, by which they were granted.

These allegations may not be true, and may be totally disproved at the hearing; but as their truth is sworn to, and is not denied, I am bound to treat them as true, for the purposes of this application. So far as they relate to dereliction in duty to the stockholders of the Erie Railway Com-

pany, the complainant cannot have here any relief based upon them.

I will also assume, for the purposes of this application, that the Erie Railway Company having, as the legal assignees of the Paterson and Hudson River Railroad Company, and of their franchises, including the right to finish the road to the Hudson river, and to tunnel Bergen hill, constructed the extension of the road to the Hudson river, holds it as part of that road, and subject to all the restrictions and duties imposed upon that road by the charter of the original company; and that it is therefore a common carrier, bound to transport goods over this extension, as well as over the residue of the road, at the rates fixed in the charter.

Whether this duty could be performed by delegating to another person or company who would discharge it in the same manner, and for the same compensation, and with the same liabilities, need not be discussed here. They have attempted to delegate it to a company who do not attempt or offer to perform the duty as common carriers, or subject to the liabilities of common carriers, but only as forwarders, and who charge for this imperfect performance more than four times the rate authorized to be charged by the Erie Railway Company. They therefore do not provide any one to discharge the duty required of them, and they utterly refuse to perform it themselves, and have bound themselves by a contract that no one but the express company shall perform it. Such contract may be void, both as *ultra vires* and contrary to law, yet it is proper to be considered as showing the intention of the company not to perform this part of their duty.

The injury to the complainant, too, is of that nature, that while there may be a remedy at law, as by recovery of damages for injury, yet is such that cannot be adequately relieved by suits for damages. It is continually recurring, and will require continued and repeated suits, and continued litigation, and the expenses of each suit would make the recovery of the excess paid an inadequate remedy. I now

assume that the Erie Railway Company is, and will remain solvent. The affidavit of the proper officer of the company, which is legally before the court, clearly shows that the company is not insolvent, or likely to prove so.

But, although the injury is proved, and the subject matter is such that a court of equity will not refuse relief, on the ground that there is adequate relief at law, the question remains, whether the injunction here applied for can be granted, or any part of it. There are injuries which this court cannot redress, although there may be no satisfactory remedy at law, and those which this court can redress, for which no preliminary injunction can issue.

The two chief objects for which the injunction is asked are to compel the railway company to return to the complainant its trucks, and to compel it to transport the locomotives of the complainant from Paterson to Long Dock at the legal rates of freight. These are to compel the company to act, not to refrain from acting. And the act commanded is the whole duty of the company, and its performance is the whole right of the complainant. It is not the case of a prohibition of keeping up a structure or maintaining some material object, the erection and continuance of which is the act that deprives the complainant of his right, and the destruction or removal of which would restore the enjoyment of it.

It is contended by the defendants that a mandatory injunction, or one which commands the defendant to do some positive act, will not be ordered, except upon final hearing, and then only to execute the decree or judgment of the court, and never on a preliminary or interlocutory motion. Or that, if it ever does so issue, it is only in cases of obstruction to easements or rights of like nature, in which a structure erected and kept as the means of preventing such enjoyment will be ordered to be removed, as part of the means of restraining the defendant from interrupting the enjoyment of the right.

Although there is some conflict in the authorities and decisions, I am of opinion, after examining into them, that this

position, with the limitation, is the established doctrine of the courts of equity, and that it is a proper and discreet limitation of the use of the preliminary injunction, as well as sustained by the weight of authority.

Justice Story, in 2 *Eq. Jur.*, § 861, says: " A writ of injunction may be described to be a judicial process, whereby a party is required to do a particular thing, or to refrain from doing a particular thing, according to the exigency of the writ. The most common form of injunction is that which operates as a restraint upon the party in the exercise of his real or supposed rights, and is sometimes called the remedial writ of injunction. The other form, commanding an act to be done, is sometimes called the judicial writ, because it issues after a decree, and is in the nature of an execution to enforce the same."

Mr. Eden begins his treatise on injunctions by saying " An injunction is a writ issuing by the order and under the seal of a court of equity, and is of two kinds. The one is the *writ remedial;* for, in the endless variety of cases in which a plaintiff is entitled to equitable relief, if that relief consists in restraining the commission or continuance of some act of the defendant, a court of equity administers it, by means of the *writ of injunction.* The other species of injunction is called the *judicial writ,* and issues subsequent to a decree, and is properly described as being in the nature of an execution."

In *Drewry on Injunctions, p.* 260, it is laid down: " It seems settled that equity has not jurisdiction to compel, *on. motion,* the performance of any substantive act."

In 3 *Dan. Chan. Prac.* 1767, it is said : " It is to be observed that the court will not, by injunction granted upon interlocutory application, direct the defendant to perform an act, but might, *upon motion,* order the defendant to pull down a building which was clearly a nuisance to the plaintiff."

Lord Hardwicke, in an anonymous case in 1 *Ves., jun.,* 140, restrained the further digging of a ditch, but refused, on motion before answer, to order the part dug to be filled up.

Chancellor Vroom, in the *Att'y-Gen.* v. *The New Jersey Railroad Co.*, 2 *Green's C. R.* 141, says: " The injunction is a preventive remedy. It interposes between the complainant and the injury he fears or seeks to avoid. If the injury be already done, the writ can have no operation, for it cannot be applied correctively, so as to remove it." In that case, the injury done was driving piles for a bridge, so as to obstruct navigation; a mandatory injunction to remove them would have remedied the whole evil.

In *Hooper* v. *Broderick*, 11 *Sim.* 47, a preliminary injunction to restrain a tenant from discontinuing to keep an inn was dissolved, on the ground that it was mandatory—the same as if he was commanded to keep an inn.

In *Blakeman* v. *Glamorganshire Canal Navigation Co.*, 1 *Myl. & Keene* 154, Lord Brougham, after a review of the cases (*p.* 183,) and quoting with approbation what Lord Hardwicke said in *Ryder* v. *Bentham*, that " he had never known an order to pull down, *on motion*, and but rarely by decree," refused so much of the injunction prayed for as directed the defendant, Powell, to fill up the collateral pond. The cases of *The East India Co.* v. *Vincent*, 2 *Atk.* 83; *Spencer* v. *London and Birmingham Railway Co.*, 8 *Sim.* 193; and of *Durell* v. *Pritchard*, 1 *Ch. App.* (*E. L. R.*) 244, are to the same effect. And in the last case, Lord Romilly, M. R., held that the court, *upon final hearing*, could not issue a mandatory injunction, directing a wall to be taken down, yet the Lords Justices, on appeal, held that it had the power, but that in the case before them it should not be exercised, and dismissed the appeal.

There are cases in which mandatory injunctions have been ordered on motion, but they are all, or nearly all, cases in which some erection placed and maintained by the defendant to effect the injury complained of was ordered to be removed, or its maintenance forbidden, on the ground that the defendant effected the act he was restrained from doing, by continuing such erection.

In *Robinson* v. *Lord Byron*, 1 *Bro. C. C.* 588, which is

2 K*

referred to as the leading case for mandatory injunction,. Lord Thurlow ordered an injunction to restrain defendant from using his dams and other erections, so as to prevent the water from flowing to the complainant's mill in such quantities as it had ordinarily done before April 4th, 1785.   The effect of this may have been to compel the removal of the part erected after 1785.   But as the case states the injury complained of to be that Lord Byron so used his dam and gates as to let the water flow irregularly, to the complainant's injury, I do not see in the report any direction, express or implied, to take down anything, or to do any act whatever.

In *Lane* v. *Newdigate*, 10 *Ves.* 192, the object of the injunction was to compel the restoring of a stop-gate which was wrongfully removed.   Lord Eldon would not order it to be restored, but restrained the preventing the use of the water by complainant by the removal of a stop-gate, which was equivalent to an order to restore it, and was so intended.

In *Ranken* v. *Huskisson*, 4 *Sim.* 13, the court restrained the defendant from permitting an erection to remain; this was equivalent to an order to remove it.   But it is like the others; simply removing that by which the defendant continued the nuisance to be restrained.

In *Mexborough* v. *Bower*, 1 *Beav.* 127, Lord Langdale ordered an injunction to restrain permitting the communication complained of (by which complainant's mine was flooded) to remain open.   The injunction was to prevent the flowing of the mine by restraining or removing the means by which the defendant continued to do it.

In the *North of England Railway Co.* v. *The Clarence Railway Co.*, 1 *Coll.* 507, the injunction prayed for was against maintaining a wall, and after the rights of the parties had been referred to, and settled in the Court of the Exchequer, V. C. Bruce hesitated to grant the injunction, although he held, *p.* 521, that mandatory injunctions might be granted; yet he referred the case to Lord Chancellor Lyndhurst, who, it is stated, granted the injunction in *nearly* the

terms of the prayer; but whether it included this manda-
tory part does not distinctly appear. The case established
the right of the complainant to build a bridge over the rail-
way of the defendant, and to rest the supports of the scaf-
folding on the soil; and the mandatory prayer was that de-
fendants should remove a wall placed on their grounds to
hinder it.

In *Greatrex* v. *Greatrex*, 1 *De Gex & Sm.* 692, the in-
junction was against preventing the plaintiffs from having
access to the books of the firm, and against removing them
from, or keeping them at any other place than the place of
business of the partnership, as the defendant had removed
the books; this was equivalent to an order to restore them,
but yet it did not command any act to be done.

In *Heracy* v. *Smith*, 1 *Kay & J.* 389, the injury was cov-
ering with tiles the chimneys from the butlers pantry of the
complainant; Lord Hatherly, (the present Lord Chancellor,
then Vice Chancellor, Sir W. P. Wood,) on the authority of
*Robinson* v. *Lord Byron*, granted an injunction, the effect
of which was, and was intended to be to compel the defend-
ant to remove the tiles; but he declined to adopt the man-
datory form, but restrained the defendant from doing any
act to prevent the smoke from arising. The substance of
the judgment is grounded on the power of the court to re-
move an erection made by the defendant to effect the injury
to be redressed, when that erection is the means by which
the defendant continues to inflict the injury from which the
court intended to restrain; and the form of it is an acknow-
ledgment of the general principle that an interlocutory in-
junction should not command the doing of any positive act.

A number of authorities and cases were cited on the
argument to show that courts of equity will, in certain
cases, decree the restitution of particular chattels. But
these are all cases where it was so ordered upon final hear-
ing. There is no case of any interlocutory injunction being
granted or even applied for, for such purpose. It would be
a simple and easy substitute for the action of replevin. And

there is nothing in this case to warrant such order, even upon final decree. The value of these trucks can be fully recovered at law, and as to the use of them in the mean-time, new ones could be built sooner than a suit in equity be brought to final hearing.

I feel, therefore, constrained to refuse the injunction so far as these mandatory prayers are concerned; as to so much of the prayer as asks to restrain James Fisk, jun., and the other defendants named in it, from entering into any agreement, or doing anything to prevent or hinder the Erie Railway Company transporting the complainant's locomotives, I think the injunction ought to be granted. They are conspiring with the Erie Railway Company to injure the complainants in a way for which the redress at law is not adequate, and therefore should be enjoined from doing any acts to that end.

I do not intend to intimate any opinion upon the question whether this court has power on the final hearing, to give the complainants the relief they seek, by compelling the Erie Railway Company to transport their locomotives at the established fares.