J. HOWARD COOMBS, appellant,

*v.*

ATLANTIC CITY RAILROAD COMPANY, respondent.

[Decided October 20th, 1924.]

On appeal from a decree or order of the court of chancery advised by Vice-Chancellor Leaming, who filed the following opinion:

"Defendant moved to strike out complainant's amended bill on the ground that its averments are inadequate to support the equitable relief sought.

"June 28th, 1923, the board of public utility commissioners adjudged the Oakland avenue grade crossing, in the borough of Oakland, over the right of way of the Atlantic City Railroad Company, dangerous to public safety, and ordered that company to relocate that crossing as an undergrade crossing at Clinton avenue in that borough, and ordered the Oakland avenue crossing vacated upon the completion of the crossing at Clinton avenue, in accordance with plans adopted by the board. The bill seeks to enjoin the railway company from closing Oakland avenue.

"No crossing at this time exists at Clinton avenue. When that crossing shall have been completed, pursuant to the

order of the board of public utility commissioners, should Oakland avenue be then closed to travel, the property owners on Oakland avenue near and southwesterly of the crossing, in seeking to reach points northeasterly of the railroad, will be obliged to cross the railroad at Clinton avenue, a point some one thousand one hundred feet northwesterly of Oakland avenue.

"Complainant owns property on Oakland avenue about seventy feet southwesterly of the crossing. Oakland avenue is a public street of the borough.

"No claim is made of want of power of the board of public utility commissioners to vacate and close Oakland avenue at the crossing as against public rights. The ground for relief is that complainant, as owner of land on Oakland avenue near the crossing, has special and private rights which the order unlawfully invades.

"It must be said to be settled in this state that the legislature enjoys the power to vacate a public street without compensation to owners of land on the street either near or even abutting the part of the street vacated, and that this power is unrestrained by our constitution; that the right to use a public street is in each citizen the same, and is exclusively a public right under control of the representatives of the public and subject to alteration or abolition, when, in the judgment of those to whom the public interests are confided, those interests demand such action; that property owners along the vacated street become entitled to compensation for losses suffered only when the legislature so provides. *Newark* v. *Hatt, 79 N. J. Law 548; Kean* v. *Elizabeth, 54 N. J. Law 462.*

"It follows that complainant can be awarded no relief based solely upon the fact that he owns land fronting on the public street referred to near the part vacated.

"But the amended bill goes further. It avers that before Oakland avenue became a public highway there existed over the same route 'an alley, lane or private right of way,' which extended from White Horse pike, a public highway, to

and into lands of complainant's predecessor in title, and was used by complainant's predecessor in title as a means of travel between his said land and White Horse pike. This alley, lane or private right of way is alleged to have been so used for fifty years prior to the acquisition in the year 1877 by defendant's predecessor in title of its railway right of way which crosses at right angles. It is further averred that defendant's predecessor in title recognized the said alley, lane or private right of way and planked the crossing to facilitate travel, and that thereafter its use continued uninterruptedly by complainant's predecessor in title and by the public generally, and said route is now a public highway.

"The theory of the amended bill is that complainant still enjoys a private right in the nature of an easement over the route which is now a public highway and known as Oakland avenue, and that the vacation of Oakland avenue as a public highway at the point where it crosses the railroad, is not operative to impair complainant's private easement.

"It will be observed that the amended bill invokes the jurisdiction of this court over the invasion of a mere private legal right in land. That this court may, by injunction, protect such right, is well settled; but it is equally well settled that primary jurisdiction over controverted legal titles to land is to be found in the courts of law, and when substantial doubts arise touching a complainant's legal title, whether that doubt arises on the face of a bill before answer filed or at final hearing, a court of equity should not assume to adjudicate that title. The exceptions to this rule, which are to be found in cases in which a recognized primary equity jurisdiction exists, are not here involved.

"The present inquiry is whether the material facts set forth in the amended bill, which facts this motion tentatively admits to be true, disclose with adequate certainty that complainant will enjoy a private right of way across the land occupied by defendant's railroad after the lawful vacation of the public highway across that land shall have become effective.

"The bill avers that a 'lane, alley or private right of way' existed from the farm of complainant's predecessor in title to White Horse pike for fifty years before defendant's prede- cessor in title acquired its railway right of way, and that, eventually, this land, alley or private right of way became a public way, and that complainant and his predecessors in title have used it during all of that period for travel to and from that farm. Little more than this is disclosed touching the way; whether the way originated by express grant or by an implied grant from user is not disclosed. Nor is it dis- closed whether the user by complainant of the 'lane, alley or private right of way' prior to its becoming a public way was adverse or merely permissive. If adverse user is relied upon to establish complainant's private rights that user must have been continued, uninterrupted and under claim of right adverse to the owner of the soil, all for the statu- tory period. Nor does it appear that the way was a way of necessity. The averments of the amended bill measurably indicate that the 'alley, lane or private right of way' re- ferred to was a mere lane on the land of another which com plainant's predecessor in title was permitted by the owner of the fee to use as a convenient or the only direct route be- tween his farm and the White Horse pike.

"But assuming that the amended bill adequately discloses that up to the time the route in question became a public highway there existed over that route an easement of way appurtenant to the land now owned by complainant, the purely legal inquiry then arises whether that private ease- ment can be said to have thereafter existed as a private way in and over the public highway, and will survive the vacation of the public highway.

"Touching this inquiry it will be found that the decisions of our sister states are in conflict, while in this state the law in that respect must be said to be unsettled. In *Dodge* v. *Pennsylvania Railway Co., 43 N. J. Eq. 351,* a case in which the easement which was claimed arose from convey- ances on proposed streets, it is said (at *p. 358*) of the re- ported case: 'The precise question, then, which this case

presents, is this: Is it settled, as a matter of law in this state, that if any part of a public street is at any time sub-sequent to the date of a conveyance of land abutting on it, abandoned or surrendered, that the grantee named in such conveyance takes, by implied grant or covenant, a private way over that part of the street in which the public right has been extinguished? I know of no case, decided by a superior court in this state, which so declares the law. None was cited on the argument of this motion. The question is one on which the courts of our sister states are at variance. The opinion in *Booraem* v. *North Hudson Railway Co., 13 Stew. 557,* says: "There is some controversy whether the private right of way in grantees, holding by such convey-ances, is merged in the public right when the dedication is consummated by public acceptance, or whether it is merely suspended thereby, and will revive if the public right is afterward abandoned." There are several adjudications made by courts, distinguished for the ability and learning of their judges, which hold that, when the public right at-taches, the preceding private right is thereby extinguished, and that, if the public right is subsequently surrendered, the adjacent owner takes the land to the middle of the street, discharged of all right of way. Citing cases. The adjudi-cations standing in conflict with this view are, perhaps, more numerous than those supporting it, but which of the two conflicting doctrines is most consistent with right reason and sound public policy this court has no authority to decide. The question, like all other questions of legal title, falls within the exclusive jurisdiction of another tribunal.'

"It may be that a private way over the land of another, founded in grant, would not become wholly merged or ex-tinguished by the lawful creation of a public highway over the same route; but until the appropriate tribunals of this state have so determined this court cannot properly so decide as the basis of relief of the nature here sought. The threatened closing of Oakland avenue will in no sense occa-sion an irreparable injury to complainant. Under the order of the commissioners, Oakland avenue cannot be

closed until Clinton avenue shall have been opened. Should Oakland avenue be then closed to travel by defendant, complainant may use the longer route and establish at law the right for which he now contends, after which this court can afford the protection he now seeks.

"Defendant's motion will be allowed."

*Mr. Lewis Starr,* for the appellant.

*Messrs. French & Richards,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Leaming.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS—15.

*For reversal*—None.