The bill is filed to compel the defendants to provide, or restore for the benefit and use of complainant, a suitable wagonway or crossing over defendants' railroad where it intersects complainant's lands. The matter is now before the court on the return of an order requiring the defendants to show cause why a preliminary mandatory injunction should not issue to compel the defendants to restore a wagonway *Page 194 
or crossing which is said to have been provided by the Morris and Essex Railroad Company many years ago, and the use of which was exercised by the intersecting landowners up to February 1st, 1927, when complainant was deprived of the use of such wagonway or crossing by a fence erected by the defendants on each side of their railroad which prevents passage across the railroad.
Briefly stated, the bill alleges that on and prior to September 22d 1846, one Jabez L. Estell owned certain farm lands in the township of Rockaway, Morris county, New Jersey; that on or about said date Morris and Essex Railroad Company, under the authority of its charter (P.L. 1835 p. 29), by appropriate proceedings condemned a right of way for a railroad across a portion of said lands, and thereafter erected a railroad thereon; that the lands thus acquired by said company are described in a report of commissioners bearing date September 22d 1846; that by deed dated February 25th, 1847, Jabez L. Estell conveyed to said company a certain strip or parcel of land therein described for a right of way for its railroad, said deed purporting to grant to the grantee substantially the same right, liberty and privilege of entering upon and making use of the land therein mentioned as was acquired by said grantee by the award in condemnation proceedings in and to the lands acquired thereby (there is a variance in the description of the parcel of land acquired through the condemnation proceeding and that acquired by the deed, and the deed is — "upon the condition that said railroad company shall, at the time of making the said road, construct and build good and sufficient cattle-guards where the said road enters upon and leaves said Estell's land, not exceeding two such cattle-guards in number, and shall keep such cattle-guards in good form. The said Estell to fence said road at his own expense"); that said company leased, under legislative sanction, all its rights, powers and privileges to Delaware, Lackawanna and Western Railroad Company, and the latter company assumed all the obligations of the former company in the operation of the railroad, which, as laid out, intersected the lands of Estell; that the portion of the Estell lands *Page 195 
now owned by complainant, title to which was acquired by deed dated June 2d 1926, has always been in the same common ownership; that under section 9 of the charter of Morris and Essex Railroad Company, and under section 26 of the General Railroad law (P.L. 1903 p. 659), a duty is imposed upon the defendants, where their railroad intersects any farm or lands of any individual, to provide and keep in repair suitable wagonways over and under said road, so that he may pass the same; that at the time complainant acquired the lands in question, so intersected by defendants' railroad, there was a wagonway over said railroad from the lands on one side thereof to the lands on the other side, and such wagonway was the only means of access to a large manufacturing plant situate on the portion of complainant's lands which lie between the defendants' railroad and the Rockaway river; that on February 1st, 1927, defendants removed said wagonway and erected a fence on each side of the railroad, thereby depriving complainant of its only access to its said manufacturing plant, which is of great value; that on and prior to February 1st, 1927, complainant was engaged in making repairs and alterations to its said plant for extensive manufacturing purposes and operations; that by reason of the acts complained of the complainant is deprived of the use of the wagonway aforesaid, and of its manufacturing plant, and suffers irreparable damage.
Defendants, by their answer, admit most of the allegations of the bill, but say that the wagonway over their railroad, which existed at the time of the acquisition of the aforesaid lands by complainant, was such as constructed and maintained by the International High Speed Steel Company, complainant's immediate predecessor in title, under a license agreement, dated May 3d 1915, between said steel company and Delaware, Lackawanna and Western Railroad Company, which latter company, under the terms of said agreement, was not obliged to provide and keep said wagonway or crossing in repair, and reserved the right to revoke such license upon sixty days' notice to the licensee, in which event the licensee was to promptly remove such wagonway or crossing; that on February 1st, 1927, in accordance with such agreement, *Page 196 
the licensor removed said wagonway or crossing, after the complainant refused to enter into an agreement similar to the one executed by said steel company with Delaware, Lackawanna and Western Railroad Company. Defendants assert there never has been any crossing or roadway over its track or right of way connecting the properties separated by its right of way and track, nor has any owner of lands and property separated by its right of way and track ever requested a crossing or wagonway, with the exception of that requested by the International High Speed Steel Company and licensed as aforesaid, and by virtue of said license agreement a crossing was constructed by said steel company on June 7th, 1915, and maintained by it until it went into bankruptcy, and defendant Delaware, Lackawanna and Western Railroad Company took up and removed said wagonway or crossing on February 1st, 1927, after the complainant refused to enter into an agreement similar to the one executed by the steel company with said defendant. The date when said licensee went into bankruptcy is not stated.
Complainant, by its affidavits, which outweigh, in my opinion, the affidavits submitted on behalf of the defendants, show that there had been a wagonway or crossing at the place in question for upwards of fifty years which had been used by complainant's predecessors in title for the carting of hay, timber, c., and by complainant as a means of access to its manufacturing establishment, and that such wagonway or crossing was kept in repair by the defendants.
Defendants, by their affidavits (the affiants being principally employes of the defendants), disclaim the existence of any wagonway or crossing at the place in question other than the one constructed in the year 1915, under the license agreement aforesaid.
Of the affidavits submitted on behalf of the complainant, those of Absalom Crampton and George E. Crampton refer to conditions existing for a period of upwards of forty-five years. They say that the land on either side of defendants' railroad, at and about the location of the wagonway or crossing in question, was owned, at various times during the aforesaid period, by their grandfather, their father, themselves *Page 197 
and their sister, and that the wagonway or crossing alleged by complainant existed during all of that time, and there was never any controversy between the defendants and any of such owners as to such wagonway or crossing, and that said wagonway or crossing had never been closed, blocked or obstructed until February 1st, 1927, when a fence was erected by the defendants. The statements of said affiants are supported by the affidavits of numerous others, including one Leslie Todd, who says that his grandfather Joseph Zeck, owned property adjoining the Crampton property, which is now owned by complainant, and that he, as a boy, often accompanied said Cramptons over the crossing where the road crosses the defendants' railroad; that he remembers such crossing for at least thirty-five years, and knows that the wagon road across the defendant's tracks was used by the owners of the property now owned by complainant, and by others having reason to go beyond the tracks for that length of time. Said affiant also says that the wagonway or crossing in question was located where claimed by the complainant until fenced off by the defendants on February 1st, 1927.
The defendants contend that if it be assumed that the complainant, by virtue of the provisions of section 9 of the charter of Morris and Essex Railroad Company be regarded as entitled to a wagonway over their tracks, the aforesaid deed by Jabez L. Estell to Morris and Essex Railroad Company exonerates them from complying with such statutory obligation, and that said deed subjects them only to the conditions contained therein, to wit, the construction and maintenance of cattle-guards where the railroad enters upon and leaves the lands formerly of Estell.
It is manifest, from the bill, answer and affidavits, that the easement claimed by the complainant is disputed by defendants. In view thereof, the respective rights of the parties should be determined at law. I am of the opinion, however, that until the rights of the respective parties may be so determined, a preliminary mandatory injunction should issue to compel the restoration of the wagonway or crossing which I find from the proofs submitted existed, and the use *Page 198 
of which was enjoyed by complainant, prior to February 1st, 1927, at which time defendants erected a fence which deprives complainant thereof, which wagonway or crossing appears to be necessary for the operation of complainant's business establishment, and the deprivation of which ostensibly subjects the complainant to irreparable injury. Though it is well settled the primary jurisdiction over controverted legal titles to land is to be found in the courts of law, and when substantial doubts arise touching a complainant's legal title, whether the doubt arises on the face of the bill before answer filed or at final hearing, a court of equity should not assume to adjudicate that title, nevertheless, it is equally well settled that this court may, by injuncton, protect a private legal right in land from invasion or obstruction. Coombs v. Atlantic City Railroad Co.,96 N.J. Eq. 709, 711; and while in Imperial Realty Co. v.West Jersey and Seashore Railroad Co., 79 N.J. Eq. 168, the court of errors and appeals held that where complainant asserts that it has an easement over defendant's land, and seeks to restrain the defendant from interfering with its use, and defendant disputes its right, equity will not interfere by injunction until such right is established at law (citing Todd
v. Staats, 60 N.J. Eq. 507; Borough of South Amboy v.Pennsylvania Railroad Co., 77 N.J. Eq. 242; Mason v. Ross,77 N.J. Eq. 527), yet, in McCran v. Public Service Railroad Co.,95 N.J. Eq. 22, the chancellor says in granting temporary injunction to protect easements, as in other cases, the court does not take jurisdiction for the purpose of settling the rights of the parties permanently, but simply to preserve such rights until the legal question upon which they are based is established; and that a preliminary mandatory injunction will issue to compel the restoration of a status quo ante in aid of a suit at law where irreparable damage would result from its being withheld; and in Fulton v. Greacen, 36 N.J. Eq. 216, it is said: "There are cases in which it is the duty of a court of equity to interpose for the protection of the property in dispute, pending the determination of a litigation concerning the legal title. In such cases the court does not take jurisdiction for the purpose of settling the *Page 199 
rights of the parties, but simply to preserve the property until the legal title to it is established;" and quotes with approvalShrewsbury and Chester Railroad Co. v. Shrewsbury andBirmingham Railroad Co., 1 Sim. (N.S.) 410, wherein the court says: "Where the alternative is interference or probable destruction of the property, there, of course, the court will be ready to lend its immediate assistance, even at considerable risk that it may be encroaching on what may eventually turn out to be a legal right of the defendant." I do not apprehend, from the proofs before me, that any injury will be done to defendants by the issue of an injunction to restore the status quo ante
February 1st, 1927, but I consider that the complainant will be irreparably injured by its refusal.
In High. Inj. (4th ed.) § 13, the author says:
"Where the legal right is not sufficiently clear to enable a court of equity to form an opinion, it will generally be governed in deciding an application for preliminary injunction by considerations of the relative convenience and inconvenience which may result to the parties from granting or withholding the writ. And where, upon balancing such considerations, it is apparent that the act complained of is likely to result in irreparable injury to the complainant, and the balance of inconvenience preponderates in his favor, the injunction will be granted;"
and, in the same section, the author says:
"Indeed, the consideration of relative convenience and inconvenience to the parties is one of the principal guides which govern courts of equity in the matter of granting or withholding relief by interlocutory injunction."
Section 2 of the same authority asserts a like principle is applicable to the grant of mandatory injunctions.
Defendants do not, by their answer or otherwise, challenge the jurisdiction of this court. They appear to be content to deny the complainant's right to the easement in question. The proper practice of the court, under such circumstances, appears to be to retain the bill until the complainant has had a reasonable opportunity to establish its title, to the easement, at law.Mason v. Ross, supra. If *Page 200 
defendants challenged the jurisdiction of the court, the present practice would actuate the court in sending the parties to the law court for the determination of the question of title to the easement in question, meanwhile retaining the bill. P.L. 1915 p.184 § 8; Sayre v. Fisher, c., 128 Atl. Rep., 862.
The deed relied upon by the defendants as an exoneration of the obligation imposed by section 9 of the charter of Morris and Essex Railroad Company to provide suitable wagonways for the use of a party whose lands intersect the railroad, does not contain an express waiver of the grantor's statutory right to a wagonway. Defendants contend that the condition in said deed requiring the grantee to provide and maintain cattle-guards impliedly limits its obligation accordingly. In 33 Cyc. 304, 305, it is said (citing cases in note 86) that statutory requirements (similar to that imposed by section 9 of the charter of Morris and Essex Railroad Company) apply whether the railroad acquires its right of way by purchase or condemnation. The charter (section 9) of Morris and Essex Railroad Company providing that it shall be the duty of said company, where its railroad intersects any farm or lands of any individual, to provide and keep in repair suitable wagonways over and under said road, so that he may pass the same, imposes a continuing duty; and even though at the time the railroad was constructed, no wagonway was deemed necessary, or provided for the benefit of the landowner, but such be now necessary, it is the duty of the defendants to provide it.33 Cyc. 306, bottom; Palmyra v. Pennsylvania Railroad Co.,62 N.J. Eq. 601 (at p. 609); affirmed, 63 N.J. Eq. 799; CentralRailroad Co. ads. State, 32 N.J. Law 224.
The Estell deed (if description of property, condition as to requirement for construction and maintenance of cattle-guards, and circumstances under which the deed was obtained, be disregarded) contains wording as to rights and privileges granted thereunder, similar in many respects (though not identical) with the sixth section of the charter of the Morris and Essex Railroad Company, and a deed made by Thomas Green to said company, which latter deed was considered *Page 201 
in the case of Green v. Morris and Essex Railroad Co., 12 N.J. Eq. 165; affirmed, 15 N.J. Eq. 469, wherein it is said that the provisions of the ninth section of the charter of the Morris and Essex Railroad Company are wholly independent of those of the seventh section (which relates to condemnation proceedings), and make it obligatory upon the company to construct and keep in repair passages over or under the railroad, where it crosses public or private roads and where it intersects lands of individuals. Chancellor Williamson, in the course of his opinion (at p. 171), says: "In my judgment, the deed in question [a deed to effectuate the award of arbitrators] does not operate as a release of any rights complainant may have under the ninth section of defendant's charter;" and (on p. 173), "I do not see how, with any propriety, a construction can be put upon this deed that would release the company from the duties imposed by the ninth section." When the aforesaid Green Case was before the court of errors and appeals, Mr. Justice Brown, in delivering the opinion in affirmance, said (at p. 475): "It may, notwithstanding the case of Brearley v. Delaware and RaritanCanal Co., Spenc. 236, be questioned whether, upon a fair construction of this deed, it does release the company from the charter obligation to construct roadways. This point is not directly before the court." The dictum of Chancellor Williamson, in the Green Case, supra, does not appear to have been criticised or overruled excepting in so far as it may be said to have been overruled in the case of Perry v.Pennsylvania Railroad Co., 55 N.J. Law 178. In Pipe Line Co.
v. Delaware, Lackawanna and Western Railroad Co.,62 N.J. Law 254, the court of errors and appeals, in referring to such part of the opinion of Chancellor Williamson, in Green v. Morrisand Essex Railroad Co., supra, which related to the deed purporting to release the company from its obligation to provide wagonways over its railroad for the benefit of intersecting landowners, says (at p. 273): "If the remarks of the chancellor are to be taken as a judicial determination that a conveyance by deed will not effect charter obligations which would subsist where premises were taken by condemnation, such a construction *Page 202 
was contrary to the decision of the supreme court in Brearley
v. Delaware and Raritan Canal Co., supra, and was overruled inPerry v. Pennsylvania Railroad Co., supra."
In Perry v. Pennsylvania Railroad Co., supra, the supreme court says: "In Brearley v. Delaware and Raritan Canal Co.,supra, it was decided by this court that the section in question [referring to section 16 of the charter of the canal company, which provides that `when its canal or feeder shall intersect the farm or land of any individual, it shall be the duty of the company to provide and keep in repair a suitable bridge or bridges over the canal or feeder, so that the owner or owners and others may pass the same'] did not apply where the company had acquired the land for the construction of its canal by a deed from the owner. The principle on which this decision was founded is that the company, by it charter, was empowered to take lands by condemnation only in case where such lands could not be obtained by agreement with the owner, and that the sixteenth section of its charter applied only when the lands acquired were obtained by condemnation; and that where the company acquired title by agreement with the owner, the liability of the company in relation thereto depends, as was said by Mr. Justice Whitehead, not upon the provisions of the charter but upon the contract between the parties." Mr. Justice Depue, in distinguishing the decisions of the Green Case and theBrearley Case, supra (at p. 186), says: "The difference between the language of the deed involved in the case in 2Beas. [Green Case on appeal], and the language of the usual conveyance of land, makes that decision [Green Case] in every aspect irrelevant to conveyances such as that which was the foundation of the decision in the Brearley Case."
I am of the opinion that the deed obtained by Morris and Essex Railroad Company from Estell, and the legal effect thereof, is distinguishable from the Brearley and Green deeds aforesaid.
In Bailey v. Schnitzius, 45 N.J. Eq. 178, which appears to be an accepted authority, it is said that a preliminary mandatory injunction will be ordered only in cases of extreme necessity; and in Rogers Locomotive Works v. Erie *Page 203 Railroad Co., 20 N.J. Eq. 379, and Wakeman v. New York, LakeErie and Western Railroad Co., 35 N.J. Eq. 496, it is said preliminary mandatory injunctions will be ordered only in cases of obstruction to easements, or rights of like nature. The casesub judice is within the class of cases aforesaid.
I will advise an order that the bill in this cause be retained, with liberty to the complainants to promptly institute a suit at law against the defendants for a determination of the right of easement claimed by it, and that a preliminary mandatory injunction issue requiring the defendants to immediately restore or provide and keep in repair pending such suit a suitable wagonway or crossing over defendants' railroad, substantially as same existed on and prior to February 1st, 1927, reserving all further directions until after the determination of such suit. But in case the complainant shall not promptly institute such suit at law, and diligently prosecute same to finality, the defendants may apply to this court for a dissolution of the injunction aforesaid and dismissal of the bill of complaint.