In 1921 a corporation known as Brilliant Silk Hosiery Company, Incorporated, was incorporated. All of the capital stock thereof had come into the hands of men employed in various capacities by the corporation in the year 1928, when a man named Ullman commenced negotiations for the purchase of the business conducted by that corporation for a merger with other similar mills. Eventually, a contract was executed on November 21st, 1928, whereby the American Exchange Irving Trust Company of New York City and the Bloomfield National Bank of New Jersey were made depositories of all of the stock held by these shareowners, upon condition to deliver the same to Ullman or his nominees "upon receiving therefor, for our account, either the sum of $300 per share in cash, or $200 per share in cash and $100 per share in stock of no par value" of a new corporation to be organized. It was also provided that if such payment was made in part by stock of such corporation so to be formed, then the same was to be retained by the depositories for a period of six months, during which time the said Ullman or his nominees was to have an option to purchase such stock upon terms and conditions therein described. It should have been said that any cash consideration coming into the hands of the depositories was to be immediately distributed among the former holders of the old stock, proportionately according to their respective holdings.
Ullman, or those he represented, not being prepared to take up the shares of stock so deposited at the time fixed in this agreement, an extension was granted for which a consideration of $15,000 was exacted and paid. On February 15th, 1929, those shares were finally purchased by the Ullman interests and payment was made therefor, partly by cash and partly by capital stock of the new company. The cash consideration has been distributed among the stockholders of the old company and as to that there is no complaint. That portion of the consideration, however, which is represented by stock issued by the new corporation is now in the hands of the Bloomfield Trust Company which refuses to *Page 330 
distribute the same among the complainants or anyone else without the consent of the defendant Phillips.
Phillips was the president of the old corporation and was entrusted by his former associates with the management of the transaction for the sale of their stock. It was represented to me by his counsel on the argument of this motion that on February 15th, when the option to purchase was exercised, Phillips was tricked into signing a warranty as to the extent and value of the assets of the old company, upon the information that it was a mere matter of form and that his warranty as president of that company was merely desired for the purpose of making the new corporation's statement more attractive. The net result of his act in that respect has been to cause the impounding of his share of the new stock by the new corporation upon the pretense, he says, that such warranty was untrue.
The complainants ask that a mandatory injunction issue forthwith to compel the Bloomfield Trust Company to deliver to them immediately, each his respective shares of the new corporation. This is resisted by the defendant Phillips, and he is joined by some of the former associates, because he says that his acts which have now led to his present embarrassment were done as an agent on behalf of the complainants and that he is entitled to be indemnified by them so that they shall all stand on a proportionate footing in the proceeds of the sale of the stock of the old company.
The only appearance in opposition to this motion is entered on behalf of Phillips. The Bloomfield National Bank, the title of which has been amended to The Bloomfield Bank and Trust Company, the only other defendant, has taken no part in the motion.
The position taken by Phillips is that under the law of agency he is entitled to be indemnified by the complainant and all other shareholders of the old company. He says that when he entered into negotiations with Ullman and his associates he did so on behalf of his fellow stockholders, and that by implication an agency was created wherein he became the agent and the others became the principals. It is true *Page 331 
that the doctrine of indemnity applies in favor of an agent for liabilities incurred in the performance of an act on behalf of the principal which is not illegal and which he does not know to be wrong. 2 C.J. 793; 1 Mech. Agency (2d ed.) § 1603. There is also a limitation on that rule that such an agent is not entitled to indemnity where he incurs an obligation growing out of an act which exceeds his authority. 2 C.J. 797; 1 Mech.Agency § 1609.
My difficulty with Phillips' argument grows out of the fact that if he did occupy the position of an agent he clearly exceeded his authority when he entered into the warranty of the audit of the old company. Attached to Phillips' affidavit in the form of an exhibit is a copy of the deposit agreement of November 21st, 1928, which has been referred to above. After fixing the terms upon which the depositories were to make delivery of the stock in escrow and the six months' option in favor of the new company, the instructions continue as follows:
"You shall not be bound or in any way affected by any notice of the modification or abrogation of this agreement unless signified to you in writing signed by all the parties hereto, nor in the case of a modification unless the same shall be satisfactory to you. * * *
"If the purchase price for the stock herewith deposited in cash and/or stock is not paid to your bank for our account on or before January 19th, 1929, the stock herewith deposited shall be without any conditions or restrictions whatsoever returned to us."
Then further instructions were included for the distribution of the stock to be issued by the new company if it should not exercise its option. This instrument, it will be observed, amounts to a naked bailment upon the single condition that the bailees were to exchange the deposit for a certain sum in cash, or cash and shares of stock, without any discretion, and under an absolute agreement to either do so or to return the deposited shares and without any other alternative. In view of these facts, I do not see how it can be said that Phillips was endowed with any power to bind his fellow stockholders by the execution of the warranty. It was urged on his behalf upon the argument that his agency was made *Page 332 
manifest by the unity of action and interest of all the stockholders of the old company. It seems to me that unity of purpose and equality of standing went no further than to attempt to provide an offer which, if accepted, would be proportionately beneficial to everyone of the stockholders and did not extend to any intention that a loss brought upon himself by any one of their number should be proportionately borne by all. Their purpose clearly was to use the advantage of collective bargaining for their mutual advantage, after accomplishing which it was "every man for himself." The argument was also made and admitted that originally the negotiations with Ullman contemplated a sale of all the assets of the old company, but that was abandoned in favor of the simpler process of a sale of all the capital stock and was adopted to avoid the very difficulty that Phillips has brought upon himself by his gratuitous warranty. It may be that he entered into it with the best intentions in the world. It may have seemed to him that otherwise this advantageous offer might be withdrawn; but even if he did there was no such emergency as justified him in assuming an authority which he did not possess.Mech. Agency § 718. The complainants and the other stockholders were available and they might at least have been consulted upon an unforeseen contingency which, if Phillips' claim is allowed, will result in their property and rights being withheld from them over the period of time necessary to complete a long litigation. Gwilliam v. Twist (1895), 2 Q.B. 84.
For this reason, and because of the clear-cut intention and desire of the stockholders of the old company, I repeat that if there was an agency the agent exceeded his authority.
But it is said that the execution of the warranty by Phillips has been ratified, and in proof thereof there is exhibited with his affidavit another document under date of February 21st, 1929, signed by all of the stockholders except Phillips, in which the latter is told that the signers' understanding is that in the negotiations of merger —
"there will be certain charges of a legal nature to clear the title of the property of the Brilliant Silk Hosiery Company and bank charges *Page 333 
in connection with the escrow and such other incidental charges as may arise.
"We hereby authorize you to pay these charges and to pro-rate the total amount of the charges among us in proportion to our holding of stock in the Brilliant Silk Hosiery Company, billing us for our proportionate share. Our signature at the bottom of this letter concedes to you our sanction of the charges and our willingness to pay our share upon presentation of our bill from you."
In the first place, as counsel for the complainants points out, there is not a thing in this language to authorize or ratify the signing of the warranty by Phillips, and, in the second place, it is elementary that there can be no ratification without notice or knowledge. There is not a thing to show that any of the complainants had any information when this exhibit was signed by them that any such action had been taken by Phillips.
A preliminary injunction is a most drastic process and should never go except to prevent irreparable injury, and this is especially so in a mandatory injunction. But where the facts are not in dispute and the law is settled as it applies to a particular case, and such relief is necessary to prevent irreparable injury to the complainant the writ should be allowed.Hodge v. Giese, 43 N.J. Eq. 342. That the court may issue the writ in a proper case has been decided time and again, at least as early as Bailey v. Schnitzius, 45 N.J. Eq. 178, and as recently as McCran v. Public Service Railway Co., 95 N.J. Eq. 22,
and Rockaway Rolling Mill v. Delaware, Lackawanna andWestern Railroad Co., 101 N.J. Eq. 192. In the case at bar it is undisputed that the value of the stock held by the Bloomfield Trust Company has declined to one-half the value at the time of issue. In these circumstances and the present condition of the stock market it seems to me that the complainants, who have not been shown incapable of being made to respond in damages, should not be compelled to await the outcome of a long litigation, at the end of which they may find that their property will have lost more, if not all, of its value.
An injunction should issue forthwith to compel the delivery of the stock in question to the complainants. *Page 334